CALIFORNIA MARINE CLEANING, INC., Plaintiff,

v.

The UNITED STATES, Defendant,

and

Pacific Tank Cleaning Services, Inc., Defendant–Intervenor.

No. 98–636C.

United States Court of Federal Claims.

May 14, 1999.

Patrick K. O'Keefe, Washington, D.C., for plaintiff, with whom were David Kasanow, Washington, D.C., and Lane L. McVey, San Diego, California, and Domenick A. Gallo, San Diego, California, of counsel.

Karin M. Norington, U.S. Department of Justice, Washington, D.C., with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, and Assistant Director Anthony H. Anikeeff, U.S. Department of Justice, Washington, D.C., and Richard G. Welsh, Naval Facilities Engineering Command, Washington, D.C., of counsel, for defendant.

C. Patrick Callahan, San Diego, California, for defendant-intervenor Pacific Tank Cleaning Services, Inc.

## ORDER ON EAJA FEES

BRUGGINK, Judge.

Pending before the court is the application (as amended) of plaintiff California Marine Cleaning, Inc. ("California Marine") for attorney and paralegal fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) (1994 & Supp. II 1996). California Marine was clearly the prevailing party in that it obtained injunctive relief in this bid protest proceeding. Defendant opposes the application on various grounds, including that the government's po-

sition was substantially justified. For reasons set out below, the court grants the application in part.

## BACKGROUND

On October 22, 1998, the court granted California Marine's petition for injunctive relief. *See California Marine Cleaning, Inc. v. United States*, 42 Fed.Cl. 281, 301 (1998). The court enjoined the United States Department of the Navy ("Navy") from canceling the solicitation at issue and directed that it consider the bid of California Marine as timely. The facts set out in that opinion are incorporated by reference. A brief summary follows below.

The dispute arises out of a solicitation for bids to perform hazardous waste disposal for the Navy. Pacific Tank Cleaning Services, Inc. ("Pacific Tank"), the defendant-intervenor here, protested with the agency the initial proposed award to the apparent low bidder, California Marine. The Navy denied Pacific Tank's protest, and Pacific Tank subsequently filed a protest with the General Accounting Office ("GAO").

The GAO sustained Pacific Tank's protest on July 1, 1998 and recommended that the Navy reject California Marine's bid as late and award the contract to Pacific Tank. *See Pacific Tank Cleaning Servs., Inc.*, 98–2 C.P.D. ¶ 2 at 5 (1998). Applying the late bid rules set out in the Federal Acquisition Regulations ("FAR"), *see* 48 C.F.R. § 14.304–1 (1997), GAO concluded that the time and date stamp on California Marine's bid could not be accepted because the time/date stamp device was accessible to the public. Having discarded that evidence, the GAO concluded:

> On this record, the scenario posited by the protester is no less plausible than the agency's position that the technician overlooked a bid while sorting through very few bids in the bid box.

> In short, there is no acceptable evidence which establishes that Cal Marine's bid was received at the installation prior to bid opening....

*Pacific Tank*, 42 Fed.Cl. at 289, 98–2 C.P.D. ¶ 2 at 4–5.

The Navy did not adopt immediately the GAO's recommendation. On July 13, 1998, California Marine filed a request for reconsideration with the GAO. California Marine alleged that the GAO had misapplied the FAR late bid rule by concluding that the time and date stamp on its bid was not acceptable evidence to establish the timeliness of its bid. It asserted that the GAO on reconsideration should find that its bid was timely and direct award of the contract to California Marine as the lowest responsive bidder. Alternatively, it argued that if the GAO had correctly determined that the bidding procedure was not secure, the proper remedy was to cancel the solicitation, secure the bid stamp device, and then resolicit.

Later in July, the Navy conducted a preaward survey of Pacific Tank's facility in preparation for an award to that company. At that point in time, the agency had apparently decided to adopt the GAO's recommendation that the contract should be awarded to Pacific Tank.

On August 6, 1998, California Marine filed this bid-protest action to enjoin the award of the contract to Pacific Tank or any bidder other than itself. The complaint alleged that the Navy intended to follow the GAO recommendation, reject California Marine's bid, and award the contract to Pacific Tank. California Marine asserted that the GAO decision was irrational and thus the Navy's decision to follow that recommendation was arbitrary, capricious, and an abuse of discretion. Plaintiff sought preliminary and permanent injunctive relief.

In reaction to California Marine's bid protest, the Navy decided not to award the contract to Pacific Tank. On August 7, 1998, in a telephone status conference with chambers, defendant informed the court that the agency had decided not to accept the GAO recommendation and, instead, would seek a settlement with the two contractors.

Settlement discussions were not successful. On August 17, 1998, the Navy issued its final decision to date, notifying Pacific Tank that it was canceling the solicitation and would later issue a new solicitation. As grounds for its decision, the Navy stated:

The Government's final decision regarding the subject solicitation is to cancel in accordance with the [FAR] 14.404–1(a)(1) and 14.404–1(c)(10)....

In its decision of July 1, 1998, the General Accounting Office (GAO) implicitly found the agency's practice of placing the bid box in the reception area and allowing bidders to date stamp their own bids undermined the integrity of the bid system. If the system lacks integrity then the entire system is tainted by that lack of integrity. In the Contracting Officer's view there is then only one appropriate remedy, resolicitation.

Contracting officer's letter of Aug. 17, 1998, at 1.

California Marine subsequently amended its complaint to add a second count, which asserted that the Navy's decision to cancel the procurement did not comply with FAR 14.404–1(a)(1) and 14.404–1(c)(10), which prohibit agencies from canceling solicitation after opening of bids unless there is a "compelling reason to reject all bids" and "cancellation is clearly in the public interest." 48 C.F.R. §§ 14.404–1(a)(1), 14.404–1(c)(10) (1997). Plaintiff asserted that because no such compelling reason existed, the Navy's decision to cancel the solicitation was arbitrary, capricious, without rational basis, and an abuse of discretion. Defendant-intervenor joined in the attack on the cancellation but urged the court to adopt the GAO's recommendation to award the contract to Pacific Tank.

The court ultimately held that the Navy's decision to cancel the solicitation was arbitrary and capricious and not in accordance with law, and enjoined its implementation. We held that the agency misinterpreted the GAO decision as implying that the agency's practice of placing the bid box in the reception area and allowing bidders to time and date stamp their own bids undermined the integrity of the bid system and thus compelled resolicitation. We pointed out that at least five bidders, including Pacific Tank, had submitted timely bids, as the GAO itself had recognized. Consequently, the court held that the cancellation decision lacked any rational basis. In addition, the court held that

the GAO decision granting Pacific Tank's protest was erroneous as a matter of law in applying the late bid rule to determine whether California Marine's bid was late. We also held that the GAO had misapplied the late bid rule and its own precedent interpreting the rule. Accordingly, the court directed the Navy to consider California Marine's bid as timely submitted.

Plaintiff timely filed an application for EAJA fees on November 24, 1998. Defendant's opposition brief raised several objections to the application: it contended that California Marine did not provide adequate proof that it met the EAJA size criteria, and did not submit the application under oath. The court granted California Marine leave to submit an amended application, which was submitted under oath and provided more current data regarding the company's net worth.

## DISCUSSION

The EAJA directs an award to a "prevailing party" against the United States, assuming certain minimum requirements are met, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (1994). With respect to corporations, the statute defines a "party" as a company with a net worth "which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees" on that same date. *Id.* § 2412(d)(2)(B) (Supp. II 1996). The EAJA sets a cap on attorney fees of $125 per hour "unless the court determines that an increase in the cost of living or a special factor ... justifies a higher fee." *Id.* § 2412(d)(2)(A). The statute further provides that an application for fees and other expenses must be filed within thirty days of final judgment and include an "itemized statement" from the applicant's attorney "stating the actual time expended and the rate at which fees and other expenses were computed." *Id.* § 2412(d)(1)(B) (1994). In addition to these statutory requirements, the court's rules require that the "application and supporting statements shall be under oath." RCFC 81(e)(1).

Defendant argues here that: (1) plaintiff failed to satisfy the eligibility requirements of the EAJA; (2) plaintiff failed to submit its application under oath; (3) the agency's position was substantially justified; and (4) even if plaintiff is entitled to an award, it cannot recover pre-complaint attorney fees, has failed to justify recovery of attorney fees above the statutory cap of $125 per hour, and has provided insufficient documentation to support claimed photocopying fees and taxi fares.

*Eligibility Criteria*

With respect to the threshold eligibility requirements, the government contends that award is inappropriate because plaintiff did not furnish sufficient proof of its net worth and the number of its employees with its initial application. Defendant contends that these deficiencies are fatal to California Marine's application because they relate to jurisdictional requirements. We disagree.

In its original application, plaintiff submitted net worth data as of September 30, 1997, the most recent financial data then available to the company. In addition, the application stated that California Marine's net worth did not exceed the $7 million cap at the time of filing of the bid protest, and that the company had forty-five employees during 1998. Contrary to defendant's assertions, these statements more than met the jurisdictional eligibility requirements of the EAJA.

In *Bazalo v. West*, 150 F.3d 1380 (Fed.Cir.1998), the Federal Circuit held that the jurisdictional eligibility requirement of the EAJA is satisfied if an applicant files an application for attorney fees and expenses prior to the thirty-day statutory deadline and includes a statement that the applicant is a "prevailing party" entitled to award under the statute. *See id.* at 1383. The court held that an applicant may "supplement his filing after the thirty-day time limitation to set forth a more explicit statement about his net worth." *Id.* at 1384. California Marine's initial application satisfied the EAJA jurisdictional eligibility requirement. The application also satisfied the other jurisdictional requirements of the statute: it was filed

within thirty days of final judgment; it alleged that defendant's position was not substantially justified; and it was supported by an itemized statement of fees and expenses. *See Commissioner v. Jean*, 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); *Bazalo*, 150 F.3d at 1383. Plaintiff was entitled, therefore, to later supplement its application with net worth data relating to the company's financial situation as of September 30, 1998. *See Bazalo*, 150 F.3d at 1383–84. We hold that California Marine complied with the net worth and number of employees criteria in the EAJA.

*Oath Requirement*

Defendant's second argument is that plaintiffs original application did not comply with RCFC 81(e)(1), which requires that EAJA applications and supporting statements be under oath. Because the initial application was not verified, defendant asserts that the court should deny California Marine's application, relying on *Scherr Construction Co. v. United States*, 26 Cl.Ct. 248 (1992). Plaintiff responds that this defect was corrected in its amended application and the issue is now moot.

Defendant's argument mistakes the "under oath" requirement set out in the court's rules with the jurisdictional requirements set forth in the EAJA. Because we have held *supra* that California Marine met the jurisdictional requirements of the statute, the court had the authority to permit plaintiff to amend its application to comply with the court's "under oath" requirement. *Cf. Bazalo*, 150 F.3d at 1384.

Defendant's reliance upon *Scherr* is not availing. In that case, the applicant failed to submit its application under oath. The court held that the applicant's failure to comply with RCFC 81(e)(1) was one basis (of three alternative bases) on which to deny the plaintiff's application for attorney fees. *See Scherr*, 26 Cl.Ct. at 250. To the extent that *Scherr* held that failure to submit an application under oath is a fatal defect that cannot be remedied, it has been overruled by *Bazalo*.[1] Because this defect is not jurisdictional,

1. There is no indication in the court's decision in *Scherr* whether the plaintiff sought to amend its

the court may permit an applicant to amend its application to achieve compliance with the court rule. This defect has now been cured and does not bar recovery.

*Substantial Justification*

 After a party has prevailed in litigation against the government, the government bears the burden of proving that its position was substantially justified. *See Doty v. United States,* 71 F.3d 384, 385 (Fed. Cir.1995). The substantial justification inquiry focuses on whether the government's decision to challenge the civil action was " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Only one determination of substantial justification can be made, which may encompass both the agency's pre-litigation conduct and the Department of Justice's subsequent litigation position. *See Jean,* 496 U.S. at 159, 110 S.Ct. 2316; *Doty,* 71 F.3d at 386. In our prior opinion, the court observed that the Navy initially took the correct position: it denied Pacific Tank's agency protest and opposed Pacific Tank's protest before the GAO. Further, after the complaint was filed here, the agency reasonably decided not to follow the GAO's erroneous recommendation. Nevertheless, the government continued to litigate the bid protest and shortly thereafter the Navy canceled the solicitation. The Department of Justice then defended that agency position before the court. It was this "position" justifying the cancellation decision that plaintiff contends was not substantially justified and which is the focus of our analysis here.

The government's argument that the Navy's decision to cancel the solicitation was substantially justified is almost entirely grounded on the agency's reliance on the GAO decision. The government argues that the GAO implicitly found that the entire solicitation process was so flawed that the only remedy was cancellation and resolicitation. In her final decision, the contracting officer stated:

defective application. It is unclear, therefore, whether the court's holding extended as far as to

In its decision of July 1, 1998, the General Accounting Office (GAO) implicitly found the agency's practice of placing the bid box in the reception area and allowing bidders to date stamp their own bids undermined the integrity of the bid system. If the system lacks integrity then the entire system is tainted by that lack of integrity. In the Contracting Officer's view there is then only one appropriate remedy, resolicitation.

Resolicitation gives all bidders an opportunity to compete on an equal basis. Returning control of the bid box to the Government restores integrity to the bidding system. A full and fair remedy in this case demands that both be done.

Contracting officer's letter of Aug. 17, 1998, at 1. The contracting officer thus interpreted the GAO's opinion in *Pacific Tank* as an implicit condemnation of the Navy's procedure for time and date stamping bids.

Before addressing the problems with this argument, the court notes at the outset that what it has previously referred to as the "mutability of the agency's position," *California Marine,* 42 Fed.Cl. at 290, detracts from the asserted reasonableness of the agency's action below. Initially, the agency determined that California Marine's bid was timely and, therefore, award should be made to California Marine as the lowest responsive bidder. The Navy denied Pacific Tank's protest of that decision. As the court pointed out, if Pacific Tank had then protested the agency decision to this court, we would not have hesitated to uphold the Navy's decision. *See id.*

The Navy's second position, reached after the GAO sustained Pacific Tank's protest, was to proceed with a pre-award survey of Pacific Tank in preparation for an award to that company. After California Marine filed this action, the Navy reconsidered its position and adopted a third approach. The agency decided not to award the contract to either Pacific Tank or California Marine, but rather to cancel and reissue the solicitation. The fact that the agency has changed its

preclude amendment of an application not submitted under oath.

position twice militates against substantial justification.

Reliance on the GAO decision is, in any event, problematic for two reasons. The first is that the GAO did *not* recommend cancellation. The GAO's specific finding was that California Marine's bid was late and its recommendation was that the award go to Pacific Tank. The GAO could not have both recommended an award to Pacific Tank and implicitly found that the entire solicitation was so flawed that it had to be canceled. Indeed, the GAO implicitly *upheld* the integrity of the procurement process by concluding that the procurement should proceed and recommending award of the contract to Pacific Tank. In the merits opinion, the court wrote:

> There is no question that the bids opened at the bid opening, including that of Pacific Tank, were timely submitted in this solicitation. Therefore, as the defendant-intervenor correctly argues, even if the lack of a "secure" time/date stamp device ultimately deprives a bidder such as California Marine of consideration of its bid, that occurrence does not impact the timeliness of the other bids.... At least five bids are indisputably responsive. The Navy's decision to cancel the solicitation and not award the contract to the lowest responsive bidder therefore lacks the required compelling reason.
>
> In short, if California Marine's bid was untimely, it should not be considered. If it were timely, it should be considered. But in neither circumstance should the solicitation be canceled to preserve the integrity of the procurement process. Rather, the integrity of the procurement process is best preserved by awarding a contract for this solicitation.

*Id.* at 294–95 (footnote omitted). Canceling the solicitation in reliance on the GAO's determination that California Marine's bid was untimely—even assuming that such a finding

was legally correct, which it was not—simply did not provide a rational basis for canceling the solicitation, let alone a compelling one. *See id.* at 296.

The second reason is that the court found the GAO decision itself was irrational. *See id.* at 299. The GAO erred by failing to determine whether California Marine's bid was timely prior to applying the late bid rule. As a consequence, GAO departed from its own precedent and failed to consider "all relevant evidence in the record" when making the timeliness determination. *See id.* In addition, we held that the GAO misapplied the late bid rule by failing to consider key evidence permitted by the rule and by improperly reading into the rule a requirement for a secure agency time/date stamp device. *See id.* at 295–96. Tying its hopes to the GAO decision, therefore, provided the agency no support for its decision to cancel.

The court concludes that neither the agency's cancellation decision nor the government's position in this litigation were substantially justified. A reasonable person could not find that the Navy was justified in canceling the solicitation on the basis of its misinterpretation of the GAO's decision in *Pacific Tank*,[2] nor that the government was justified in defending the agency's final decision. There being no other bar to a recovery, the court holds that California Marine is entitled to recover its reasonable and proven fees and expenses.

*Quantum*

In its amended application, plaintiff seeks reimbursement for $48,085.93 in attorney and paralegal fees and expenses incurred on or after July 15, 1998. This claim consists of $43,940.50 for attorney fees, $2,346.00 for paralegal fees, and $1,799.43 for photocopies, messenger services, express mail fees, telephone charges, Westlaw and Lexis online legal research expenses, and taxi fares. Defendant raises three challenges to the claim:

**2.** Defendant stated during the bid protest action that the agency's cancellation decision was also "based in large part" on California Marine's decision to initiate an action in this court. *See California Marine,* 42 Fed.Cl. at 296. As we stated in our prior decision, the Navy's decision could only be supported by evidence in the ad-

ministrative record at the time the decision was made. The Navy's desire to avoid protracted litigation and to appease both bidders could not provide a compelling reason for cancellation. *See id.* This rationale for the cancellation decision does not support defendant's argument that its position was substantially justified.

(1) it includes charges for representation prior to August 6, 1998, the date the complaint was filed in this court; (2) plaintiff has failed to justify recovery of attorney fees above the statutory cap of $125 per hour; and (3) plaintiff has provided insufficient documentation to support claimed photocopying charges and taxi fares.

*Pre–Complaint Attorney and Paralegal Fees*

Defendant contends that California Marine cannot recover claimed attorney and paralegal fees for the period prior to August 6, 1998, the date on which the complaint was filed. It asserts that "all fees and costs incurred prior to the date upon which this suit was initiated in the Court of Federal Claims are per se unrecoverable." Def.'s Reply Br. at 5 (citing *Prowest Diversified, Inc. v. United States,* 40 Fed.Cl. 879 (1998) and *Levernier Constr., Inc. v. United States,* 947 F.2d 497 (Fed.Cir.1991)). Defendant contends that all of the fees incurred by plaintiff prior to August 6, 1998 related to California Marine's request for reconsideration before the GAO; none related to preparation for litigation in this court. Plaintiff asserts that EAJA fees and expenses may be recovered for " 'legal and factual research preparatory to Claims Court litigation.' " Pl.'s Reply Br. at 12 (quoting *Cox Constr. Co. v. United States,* 17 Cl.Ct. 29, 33–34 n. 2 (1989)). Moreover, plaintiff contends that all fees incurred after the filing of the request for reconsideration and prior to the filing of the complaint in this court were in preparation for litigation here.

Defendant's assertion that pre-complaint fees and expenses are per se unrecoverable is plainly incorrect. The Federal Circuit has held that the EAJA permits recovery of attorney fees and expenses incurred or paid "in preparation for trial," which would include fees incurred in preparation of filing of suit in this court. *Oliveira v. United States,* 827 F.2d 735, 744 (Fed.Cir.1987). In *Levernier,* one of the cases cited by defendant, the Federal Circuit quoted with approval language from this court holding that "[c]ertainly fees for legal and factual research preparatory to Claims Court litigation" constitute fees recoverable under the EAJA. *Levernier,* 947 F.2d at 501 (quoting *Cox,* 17 Cl.Ct. at

33–34 n. 2). In *Prowest,* the other case cited by defendant, the court held that certain fees incurred conducting legal and factual research prior to filing the complaint *were* compensable. *See Prowest,* 40 Fed.Cl. at 886 (citing *Levernier,* 947 F.2d at 501). In fact, in prior cases, the government has conceded that EAJA applicants were entitled to recover the costs of drafting and filing their complaints. *See, e.g., id.; Cox,* 17 Cl.Ct. at 33–34 n. 2. Further, this court has affirmatively awarded attorney fees incurred prior to the filing of a bid protest action in this court. *See PCI/RCI v. United States,* 37 Fed.Cl. 785, 791 (1997). Defendant's sweeping assertion that pre-complaint fees and expenses are per se unrecoverable has no basis.

 The real issue before the court is whether California Marine may recover pre-complaint attorney and paralegal fees in *this* action, during the period when plaintiff was pursuing an administrative remedy before the GAO and preparing to commence a bid protest before this court. The court agrees with defendant that the EAJA only contemplates reimbursement for fees and expenses directly associated with the pursuit of a "civil action" in federal court, 28 U.S.C. § 2412(d)(1)(A), and does not encompass administrative actions. *See Levernier,* 947 F.2d at 501. The GAO is a separate tribunal and protests filed in that forum are not "civil actions" within the ambit of EAJA. Attorney fees and expenses incurred in litigation before the GAO thus may not be recovered under the EAJA; instead, they are recoverable under a separate statute. *See* 31 U.S.C. § 3554(c)(1) (1994). Plaintiff, therefore, may only recover fees incurred with respect to the present civil action. *See Levernier,* 947 F.2d at 501–02 (noting that the appropriate question is "whether fees were incurred in a 'civil action' " or an administrative action); *Oliveira,* 827 F.2d at 744 (stating that this court "may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the *specific case before the court* ") (emphasis added).

 Accordingly, fees relating to the pursuit of California Marine's request for reconsideration before the GAO may not be recovered. Moreover, the Federal Circuit has

directed that "expenses of an attorney that are not incurred or expended *solely or exclusively* in connection with the case before the court ... cannot be awarded under the EAJA." *Oliveira,* 827 F.2d at 744 (emphasis added). This same test applies with no less force to claims for attorney or paralegal fees. Plaintiff thus has the burden of proving that pre-complaint fees were incurred in connection with the bid protest action here rather than on the GAO proceeding. *See PCI/RCI,* 37 Fed.Cl. at 791 n. 5 (denying recovery for a time entry because the court was "unable to determine the portion of the time billed that should be allocable to preparing the bid protest").

Applying these precedents to the present context, we must disallow a portion of the attorney fees claimed by California Marine. The billing records submitted with plaintiff's application indicate that California Marine first consulted its attorneys regarding possible "litigation alternatives" on July 15, 1998. Yet, they also reveal that, in addition to assessing the possibility of filing a bid protest in this court, plaintiff's attorneys were preparing additional comments with respect to the request for reconsideration at the GAO. Many of the time entries indicate that work was being conducted on both fronts simultaneously. From July 23, 1998 onward, however, the time entries refer only to the forthcoming protest at this court. Accordingly, because plaintiff has not furnished the court with the means to segregate attorney hours billed prior to July 23, 1998, and thus has not shown that any of these hours were incurred solely or exclusively on the civil action in this court, we disallow that portion of plaintiff's claim. The disallowed entries total 15.5 hours.[3]

*Adjustment to Statutory Attorney Fee Cap*

Plaintiff asserts that it is entitled to recover attorney fees exceeding the cap for two reasons: (1) the "expertise and experience" of plaintiff's attorneys constitutes a special factor justifying a higher fee; and (2) it is entitled to a cost of living adjustment ("COLA") for those hours billed at rates higher than $125.[4] Defendant takes issue with both contentions.

■ Plaintiff's first argument is that its success in the bid protest before this court demonstrates the exceptional expertise of its counsel, warranting recovery of attorney fees exceeding the statutory cap. It argues that the success of this protest stands in stark relief when compared to the efforts of local counsel, who were unsuccessful in their representation of plaintiff before the GAO. We agree with defendant that plaintiff has not established entitlement to a special factor adjustment to the presumptive statutory maximum fee. Plaintiff's success on the merits of the bid protest is not a proper consideration for an award under the EAJA. In *Pierce,* the Supreme Court expressly rejected the trial court's adjustment to the statutory cap based in part upon "the results obtained" by plaintiff's counsel. *See Pierce,* 487 U.S. at 573, 108 S.Ct. 2541; *see also Prowest,* 40 Fed.Cl. at 889 ("plaintiff's mere success on the merits is insufficient for an enhanced award").[5] The court, therefore, cannot grant an upward adjustment to the statutory cap because plaintiff's counsel received a favorable ruling in this court following an unsuccessful intervention in a GAO protest.

■ To the extent the plaintiff seeks an adjustment to the statutory cap because its counsel possess "expertise and experience in the field of government contracts and, specifically, bid protests," this argument is also unavailing. The EAJA permits an adjustment for such circumstances as "the limited availability of qualified attorneys for the proceedings involved." 28 U.S.C.

---

3. None of these disallowed hours pertain to paralegal services.

4. None of the paralegal fees claimed by plaintiff exceeded the $125 per hour statutory cap.

5. Moreover, we cannot agree wholeheartedly with plaintiff's assertion that its counsel "identified the specific legal issues and arguments regarding timeliness that ultimately resulted in Cal Marine's victory before this Court," thus enabling plaintiff to prevail whereas efforts of local counsel—who lacked bid protest experience—were unsuccessful. Prior to oral argument, the court directed the parties to address GAO decisions pertinent to the timeliness issue at the heart of this case, rather than the late bid rule decisions cited by the parties in their briefs.

§ 2412(d)(2)(A)(ii) (Supp. II 1996). The Court has interpreted this exception narrowly, stating that:

> the exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.

*Pierce,* 487 U.S. at 572, 108 S.Ct. 2541.

Without denigrating plaintiff's counsel's extensive experience in the area of government contracts, it cannot be said that they provided any distinctive knowledge or specialized skill akin to admission to the patent bar or proficiency in foreign law. This court has declined to hold that expertise in government contracts law per se satisfies the EAJA special factor requirement, as refined in *Pierce. See, e.g., Prowest,* 40 Fed.Cl. at 889; *Esprit Corp., Inc. v. United States,* 15 Cl.Ct. 491, 494 (1988). Nor has plaintiff demonstrated that distinctive knowledge or specialized skill was required to litigate the issues in this case—it cannot be said that the case broke the mold in the field of bid protests. *See Prowest,* 40 Fed.Cl. at 889; *Cox,* 17 Cl.Ct. at 37; *Keyava Constr. Co. v. United States,* 15 Cl.Ct. 135, 138–39 (1988). We decline, therefore, to adjust the statutory maximum for any special factor.

Plaintiff next argues that it is entitled to a cost of living adjustment. Defendant opposes any such adjustment, noting that COLAs are awarded at the discretion of the court, not as a matter of right, and that California Marine failed to provide any justification for a COLA.

Cost of living adjustments are specifically contemplated in the EAJA. *See* 28 U.S.C. § 2412(d)(2)(A)(ii). They are permitted as a reflection of the increase in the cost of living from the effective date of the statutory cap to the date legal services were rendered.[6] *See Doty,* 71 F.3d at 387. Although COLAs are awarded at the discretion of the court, *see Oliveira,* 827 F.2d at 742, nevertheless, the justification for such award is self-evident if the applicant alleges that the cost of living has increased, as measured by the Department of Labor's Consumer Price Index ("CPI"). We decline to impose a requirement that an applicant must do more than request such an adjustment and present a basis upon which the adjustment should be calculated. *See Cox,* 17 Cl.Ct. at 37; *Adams v. Chater,* 914 F.Supp. 1365, 1371 (E.D.La. 1995). We grant plaintiffs' request for a COLA to the statutory cap.

Plaintiff's calculation of the COLA is incorrect, however. Plaintiff advocates a revised cap of $219.95, calculated by multiplying the present statutory cap of $125 by the CPI as of November 1998 (the month the original EAJA application was filed) and dividing by the CPI as of October 1981 (the month that the original EAJA cap of $75 took effect). Although defendant did not challenge this calculation, the court must correct plaintiff's calculation to prevent unjustified over-compensation. It is incorrect in two respects. First, and most importantly, the use of October 1981 as the baseline month is inappropriate for the present cap of $125, which took effect in March 1996. *See* Pub.L. No. 104–121 §§ 232(b)(1), 233, 110 Stat. 847, 863–64 (1996). Although the Federal Circuit and other circuits have advocated use of October 1981 as the appropriate baseline, the selection of that particular month was tied indivisibly to the October 1, 1981 effective date of the $75 statutory cap in effect at the commencement of the underlying litigation. *See Doty,* 71 F.3d at 387; *Chiu v. United States,* 948 F.2d 711, 718 (Fed.Cir.1991); *see also Rueda–Menicucci v. INS,* 132 F.3d 493, 496 n. 5 (9th Cir.1997). The EAJA, however,

---

6. The duration of the litigation is thus not a factor in the calculation per se, although it would indirectly affect the dates on which some services are rendered. An upward adjustment may be justified, therefore, for bid protest actions, which are generally resolved within a matter of weeks or months (as was the case here), provided the cost of living has increased.

was amended in 1996, raising the statutory cap to $125. *See* Pub.L. No. 104–121 § 232(b)(1), 110 Stat. at 863. This new cap applies to all civil actions commenced on or after the effective date of the 1996 statute, March 29, 1996. *See id.* § 233, 110 Stat. at 864. Consequently, March 1996 is the proper baseline for calculation of a COLA to the $125 cap. *Cf. Doty,* 71 F.3d at 387; *Chiu,* 948 F.2d at 718.

The second error in plaintiff's calculation is its use of November 1998—the date plaintiff filed its original application—as the end date for measurement of the COLA. Instead, the appropriate end date is the date services were rendered. *See Doty,* 71 F.3d at 387; *Chiu,* 948 F.2d at 722. In this case, plaintiff's application seeks reimbursement for services rendered on the bid protest in this court from July 23, 1998 through October 23, 1998.[7] Theoretically, fees billed in each month from July through October should be adjusted based upon the CPI datum for each month. *See Chiu,* 948 F.2d at 722. However, because attorney fees were approximately evenly distributed over these four months, we will use the arithmetic mean of the CPI for these four months to adjust all attorney fees. *See id.* n. 5 (citing with approval the use of a single mid-point inflation adjustment factor in *Keyava,* 15 Cl.Ct. at 140); *see also Doe v. United States,* 16 Cl.Ct. 412, 421 (1989).

■ Although plaintiff has not provided CPI figures for these months, we take judicial notice of the relevant data because the index is widely accepted as a means of calculating cost of living increases. *See Hyatt v. Heckler,* 807 F.2d 376, 383 (4th Cir.1986),

*cert. denied,* 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987), *Kunz Constr. Co. v. United States,* 16 Cl.Ct. 431, 438 (1989), *aff'd,* 899 F.2d 1227 (Fed.Cir.1990). As of March 1996, the CPI stood at 155.7.[8] For July–October 1998, the mean CPI figure was 163.6. Dividing the latter by the former yields a COLA of 5.0%. The adjusted statutory cap is thus $131.25 per hour.[9]

Of the 173.0 attorney hours claimed by plaintiff, we have disallowed 15.5. The remaining 157.5 hours reflect a reasonable allotment of time to this litigation and are thus compensable. Plaintiff's total recovery for attorney fees is thus $20,671.87. In addition, we award plaintiff the full amount claimed for paralegal fees, $2,346.00.

*Photocopying Fees and Taxi Fares*

■ Defendant's final challenge is to $360.90 in photocopying costs incurred in August 1998 and $85.00 in taxi fares claimed for September and October 1998. Defendant argues that plaintiff has failed to provide sufficiently detailed billing or adequate justification for such a high number (2406) of copies. The court disagrees. The level of detail provided is typical of law firm billings and is adequate. It identifies the number of copies made by specific date. This is adequate to permit recovery under the EAJA. We also find that the amount of copying is not unreasonable.[10] Plaintiff is entitled to its copying expenses.

■ Defendant challenges $85.00 claimed for seven round trip taxi fares to the court by attorneys and staff. Plaintiff has submitted petty cash vouchers to support its claim, not actual taxi receipts. Defendant

---

7. Plaintiff has not submitted an application for attorney fees and expenses incurred in pursuing this application.

8. We utilize the CPI for "All Urban Consumers, U.S. City Average, All Items" as the appropriate CPI index. Ideally, we would utilize an index tied to Washington, D.C., the city in which legal services were performed. *See Wilkett v. ICC,* 844 F.2d 867, 875 (D.C.Cir.1988); *see also Cox,* 17 Cl.Ct. at 37 (applying data for San Diego); *Kunz,* 16 Cl.Ct. at 438 (applying data for San Antonio). The Department of Labor, however, ceased compiling CPI data for the Washington metropolitan area shortly after it introduced a new index tied to the Washington–Baltimore area in November

1996. There is no March 1996 datum point for the Washington–Baltimore CPI index, nor are their 1998 data for the defunct Washington metropolitan area index.

9. $125 × 163.6/155.7 = $131.25.

10. Defendant raised particular objection to high numbers of photocopies made on three particular days in August. The court finds the number of copies unsurprising given that plaintiff filed a substantial complaint and a motion for preliminary injunction on August 6, and an amended complaint on August 21. Moreover, as defendant itself acknowledges, plaintiff filed numerous attachments with its complaint.

also objects to reimbursement for tips. We find that award of the entire claimed amount is appropriate. Under the EAJA, the court may award expenses "customarily charged to the client where the case is tried." *Oliveira,* 827 F.2d at 744. Defendant has not alleged that it is not customary practice for law firms to charge clients for tips paid. The court finds that the documentation for these expenses is adequate. Nor will the court require further explanation of the differences in amounts for similar trips.

Defendant does not challenge the remaining aspects of plaintiff's application.[11] Accordingly, plaintiff is entitled to recover its remaining expenses of $1,353.53. We thus award plaintiff a total of $1,799.43 in expenses.

## CONCLUSION

Plaintiff is entitled to recover appropriate attorney fees and expenses. It was the prevailing party and the government's position was not substantially justified. In addition, it has met the statutory jurisdictional requirements for an EAJA claim. After adjusting the fee amount, plaintiff is entitled to recover $20,671.87 in attorney fees, $2,346.00 in paralegal fees, and $1,799.43 in expenses. Accordingly, the clerk is directed to enter judgment for plaintiff in the amount of $24,817.30.

---

11. Initially, defendant opposed plaintiff's application for Lexis charges for October 1998 due to lack of itemization. Plaintiff's amended application included adequate itemized billing records and defendant subsequently dropped its opposition to these charges.