**Schonda Scott HILLENSBECK and Samantha Scott, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 04–1455C.**

United States Court of Federal Claims.

Nov. 30, 2006.

Timothy E. Pujol, Brittany A. Keaton, Pujol & Pryor, Prairieville, Louisiana for plaintiff.

Michael J. Dierberg, United States Department of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND FINAL JUDGMENT REGARDING ATTORNEY FEES AND OTHER EXPENSES

BRADEN, Judge.

### I.   RELEVANT BACKGROUND.[1]

On May 17, 2001, Samantha Scott ("Plaintiff") filed a claim against the United States ("Government") with the Bureau of Justice Assistance ("BJA") for survivor benefits afforded under the Public Safety Officers' Benefits Act ("PSOBA"), 42 U.S.C. §§ 3796, *et seq. See* AR Ex. 1. On June 8, 2001, the BJA determined that Deborah Lynn Scott ("Ms. Scott"), Plaintiff's mother, was not covered under the Act and therefore, no benefits were available to her survivors. *Id.* Ex. 9. On February 5, 2002, the BJA convened a hearing to review that decision. *Id.* Ex. 10. On June 26, 2002, the BJA Hearing Officer issued a Determination of Reconsideration, finding that Plaintiff was entitled to survivor

---

**1.**  Relevant facts were discussed in *Hillensbeck v. United States,* 68 Fed.Cl. 62 (2005) (*"Hillensbeck I"*) and *Hillensbeck v. United States,* 69 Fed.Cl. 369 (2006) (*"Hillensbeck II"*) and derived from Plaintiff's September 1, 2006 Motion for Attorney's Fees ("Pl.AF") and exhibits attached thereto ("PX 1–5"), and the Government's October 11, 2006 Response ("Gov't AF Resp.").

benefits. *Id.* Ex. 11. On June 26, 2003, the Director of the BJA reversed the Hearing Officer's determination and reinstated the initial determination of the BJA. *Id.* Ex. 13. On September 14, 2004, Plaintiff filed a Complaint in the United States Court of Federal Claims for survivor benefits. On August 31, 2005, the court issued a Memorandum Opinion and Order denying the Government's Motion for Judgment on the Administrative Record and granting Plaintiff's Cross–Motion, as to Plaintiff. *See Hillensbeck v. United States,* 68 Fed.Cl. 62, 74 (2005).

On January 31, 2006, the court entered a Memorandum Opinion and Final Order, awarding Plaintiff $146,949.60, and affording Plaintiff the opportunity to file an application for attorney fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). *See Hillensbeck v. United States,* 69 Fed.Cl. 369, 382 (2006).[2]

On April 19, 2006, the Government filed an appeal with the United States Court of Appeals for the Federal Circuit. *See* PX 2 at 1. On August 7, 2006, the Government withdrew that appeal. *Id.* at 2.

On September 1, 2006, Plaintiff filed a Motion for Attorney Fees, pursuant to 28 U.S.C. § 2412(d)(1)(A). On October 11, 2006, the Government filed a Response.

## II. DISCUSSION.

### A. Requirements Of The Equal Access To Justice Act.

The Equal Access to Justice Act ("EAJA") authorizes:

> a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

In this case, the court has determined that Plaintiff satisfied each of these requirements.

### 1. Plaintiff Is A "Prevailing Party."

The Government does not dispute that Plaintiff is a "prevailing party." *See* Gov't AF Resp. at 1.

### 2. The Government's Position Was Not "Substantially Justified" In This Case.

#### a. Relevant Standard.

■ The EAJA "allows a prevailing party to recover attorney's fees, unless the position of the [G]overnment was substantially justified." *Bowey v. West,* 218 F.3d 1373, 1374 (Fed.Cir.2000) (quoting 28 U.S.C. § 2412(d)). Prevailing party status, however, does not automatically render the Government's position not substantially justified. *See Scarborough v. Principi,* 541 U.S. 401, 415, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) (holding that "Congress did not want the 'substantially justified' standard to 'be read to raise a presumption that the Government position was not substantially justified simply because it lost the case[.]' " (citations omitted)). The United States Supreme Court has defined "substantially justified," as meaning: "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (holding that to satisfy the substantially justified standard, the government's position must have "a reasonable basis in both law and fact." (citations omitted)); *see also Smith v. Principi,* 343 F.3d 1358, 1362–63 (Fed.Cir.2003) ("In conducting a 'totality of the circumstances' inquiry, a fact-finder will naturally and properly focus on those circumstances that are 'relevant,' and in particular on any circumstances that may be 'determinative.' " (citations omitted)); *Massie v. United States,* 226 F.3d 1318, 1321 (Fed.Cir.2000) ("As a waiver of sovereign immunity, the EAJA is interpreted narrowly. But this is not a talisman for permitting the [G]overnment to avoid liability in all cases.").

The Government has the burden of demonstrating that its position was substantially

---

**2.** Previously, the court determined that co-plaintiff, Schonda Scott Hillensbeck, did not have standing. *See Hillensbeck II,* 69 Fed.Cl. at 377–78.

justified. *See Scarborough*, 541 U.S. 401 at 414, 124 S.Ct. 1856, 158 L.Ed.2d 674 ("The burden of establishing 'that the position of the United States was substantially justified,' . . . must be shouldered by the Government." (citations omitted)); *RAMCOR Servs. Group v. United States*, 185 F.3d 1286, 1290 (Fed. Cir.1999) (holding that, although the EAJA is not a mandatory fee-shifting device, the burden is on the Government to prove that the litigation and agency position was reasonable in law and fact). The term " 'position of the United States' refers to the [G]overnment's position throughout the dispute, including not only its litigating position but also the agency's administrative position." *Doty v. United States*, 71 F.3d 384, 386 (Fed.Cir.1995) (internal citations omitted); *see also Chiu v. United States*, 948 F.2d 711, 715 (Fed.Cir.1991) ("[T]rial courts are instructed to look at the entirety of the [G]overnment's conduct[.]")

### b. The Court's Resolution.

In this case, the BJA concluded that Ms. Scott was not a "public safety officer," pursuant to the PSOBA. *See* AR Ex. 13; *see also* 42 U.S.C. §§ 3796(a) (For a survivor to qualify for a benefit under the PSOBA: 1) *a public safety officer;* 2) must have suffered a "personal injury;" 3) the injury must have been suffered "in the line of duty;" and 4) the death must have been "the direct and proximate result" of the personal injury. (emphasis added)); 42 U.S.C. § 3796b(8)(A) (defining "public safety officer" as an "individual serving a public agency in an official capacity, with or without compensation as a law enforcement officer, as a firefighter, as a chaplain, or as a member of a rescue squad or ambulance crew").

In making this determination, the BJA first relied on the U.S. Department of Justice, *Legal Interpretations of the Public Safety Officers' Benefits Act* (1981) ("DOJ *Legal Interpretations")* to determine that the term "serving a public agency in an official capacity" means:

> an officer, employee, volunteer, or in a similar relationship of performing services as a part of a public agency. To have such a relationship with a public agency, *an individual must be officially recognized or designated as functionally within or a part of the public agency.*

AR Ex. 13 at 9 (DOJ *Legal Interpretations* ) (emphasis added).

Second, the BJA concluded that, as a matter of law, Ms. Scott could not be considered a "public safety officer," even if she were "serving a public agency in an official capacity," because she was not a "public employee." AR Ex. 13 (citing 42 U.S.C. § 3796b(4) (2003)) (defining "firefighter" as "an individual serving as an officially recognized or designated member of a legally organized volunteer fire department and an officially recognized or designated *public employee* member of a rescue squad or ambulance crew"(emphasis added)).

The court, however, determined that the BJA's decision was arbitrary and capricious and not in accordance with the law. *See Hillensbeck II*, 69 Fed.Cl. at 381 (citations omitted). The court determined that the DOJ *Legal Interpretations*, while of general interest, were not rules, regulations, or procedures, and had no precedential authority in the United States Court of Appeals for the Federal Circuit or the United States Court of Federal Claims. *See Hillensbeck II*, 69 Fed. Cl. at 381 (citations omitted). In setting aside the BJA Director's decision, the court held that "there is no ambiguity in Congress' definition of 'public safety officer.' " *Id.; see also* 42 U.S.C. § 3796b(8)(A) (defining "public safety officer" as an "individual serving a public agency in an official capacity . . . *as a member of a[n] . . . ambulance crew"* (emphasis added)). Accordingly, the court held that the DOJ *Legal Interpretations* unlawfully narrowed Congress' explicit definition of "public safety officer." *Id.* at 381. In addition, the court held that the statutory definition of "public safety officer" does not require that an individual be a public employee. *Id.* (citing 42 U.S.C. § 3796b(8)(A)). Accordingly, the court determined that Ms. Scott was "serving a public agency in an official capacity" as a member of a rescue squad or ambulance crew, and thus met the definition of a "public safety officer." *Hillensbeck II,* 69 Fed.Cl. at 381; *see also* 42 U.S.C. § 3796b(8)(A).

The Government, argues that the BJA Director's decision was substantially justified, because the court came to a conclusion "about which reasonable minds can, and did, disagree," in that it was reasonable for the BJA to rely on the DOJ *Legal Interpretations* and the "public employee" clause of 42 U.S.C. § 3796b(4) (2003). *See* Gov't AF Resp. at 4–5.

The Government also contends that both parties relied on the DOJ *Legal Interpretations'* definition of "public safety officer" as a person "serving the agency in an official capacity," but weighed the facts differently to determine whether Ms. Scott fell within the definition. *See* Gov't AF Resp. at 4. Accordingly, the Government argues that the BJA Director's decision that Ms. Scott fell outside the definition, based upon a different "weighing of the facts," was not unreasonable. *Id.* at 5.

Previously, the court held that "the BJA must give effect to Congress' express unambiguous intent." *See Hillensbeck II,* 69 Fed. Cl. at 378 (citing *Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 841, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency[.]")). For purposes of an award under the EAJA, "there is no justification for the [G]overnment's position when clear, unambiguous regulations directly contradict that position." *Filtration Dev. Co. v. United States,* 63 Fed. Cl. 612, 621 (Fed.Cl.2005). The BJA, not the Plaintiff, is responsible for correctly interpreting and applying the law. In this case, the BJA relied on a non-binding source to narrow an unambiguous, statutory definition. *See* 42 U.S.C. § 3796b(8)(A).

The Government's Motion for Judgment on the Administrative Record did not rely on the "public employee" argument. Nevertheless, the Government now contends that the BJA's reliance on the "public employee" argument was not "so unreasonable as to render the Government's entire position, both at the administrative level and before this Court, to be substantially unjustified." Gov't AF Resp. at 5. In addition, the Government suggests that this argument "received validation by Congress, which amended the stat-

ute in 2006." *Id.* (citing 42 U.S.C.A. § 3796b(7)(" '[M]ember of a rescue squad or ambulance crew' means an officially recognized or designated public employee member of a rescue squad or ambulance crew.")).

In advancing the "public employee" argument, the Director relied on a statutory definition of "firefighter"—a separate and distinct term—to narrow the definition of "public safety officer." *See* 42 U.S.C. § 3796b(4)(2003); 42 U.S.C. § 3796b(8)(A). Moreover, given the unambiguous nature of the statute at the time of application, subsequent legislative history has no bearing on the court's determination of whether the Government's position was substantially justified. *See Pension Benefit Guaranty Corporation v. LTV Corp.,* 496 U.S. 633, 650, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990) ("subsequent legislative history is a 'hazardous basis for inferring the intent of an earlier' Congress") (quoting *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960)); *see also Fogarty v. United States,* 340 U.S. 8, 13–14, 71 S.Ct. 5, 95 L.Ed. 10 (1950) (holding subsequent legislative history could not "supplant the contemporaneous intent" of the Congress which adopted the Act.)

For these reasons, the Government's position was not "substantially justified." *See* 28 U.S.C. § 2412(d)(1)(A).

### 3. In This Case There Are No Special Circumstances Making The Award Unjust.

The court may not make an award, if there are special circumstances making the award unjust. *See* 28 U.S.C. § 2412(d)(1)(A). The Government has not argued nor has the court identified any "special circumstances" that would make an award unjust in this case.

### B. Calculation Of Applicable Fees And Other Expenses.

The EAJA directs the prevailing party to submit an itemized statement showing the actual time expended and the rate at which the attorney fees and other expenses were computed. *See* 28 U.S.C. § 2412(d)(1)(B).

On September 1, 2006, Plaintiff submitted the requisite itemized statements and computations, claiming $14,268.75 for 114.5 attorney hours billed and $486.89 in expenses. *See* PX 4.

### 1. Fees Incurred At Administrative Level Are Not Recoverable Under The Equal Access To Justice Act.

■ In *Cox Constr. Co. v. United States,* 17 Cl.Ct. 29 (1989), the predecessor to the United States Court of Appeals for the Federal Circuit held:

> It is well-established that EAJA authorizes a prevailing party's recovery of only such fees and expenses as were incurred in "civil actions" (28 U.S.C. § 2412(d)(1)(A)) and agency "adversary adjudications" (5 U.S.C. § 504(a)(1)). The Act does not permit recovery of those fees and expenses attendant to plaintiff's "prosecution of its certified claim before the contracting officer." (quoting *Keyava Constr. Co. v. United States,* 15 Cl.Ct. 135, 138 (1988)). Nor can a successful applicant recover "those [fees otherwise] incurred during administrative consideration of a claim before litigation." (quoting *United Constr. Co. v. United States,* 11 Cl.Ct. 597, 599 (1987)).

*Id.* at 33; *see also Levernier Constr., Inc. v. United States,* 947 F.2d 497, 500–02 (Fed.Cir. 1991) (examining EAJA statute and precedent to conclude that fees incurred for challenging any agencies actions before a contracting officer were not recoverable, because they were not incurred during an adversary adjudication).

The EAJA incorporates by reference the definition of an "adversary adjudication" as:

> (i) an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise, but excludes an adjudication for the purpose of establishing or fixing a rate or for the purpose of granting or renewing a license, (ii) any appeal of a decision made pursuant to section 6 of the Contract Disputes Act of 1978 (41 U.S.C. 605) before an agency board of contract appeals as provided in section 8 of the Act (41 U.S.C. 607), (iii) any hearing conducted under

chapters 38 of title 31, and (iv) the Religious Freedom Restoration Act of 1993. 5 U.S.C. § 504(b)(1)(C).

In this case, the Government contends that fees incurred prior to October 6, 2003, when Plaintiff's counsel first acted in anticipation of litigation, are not recoverable. *See* Gov't AF Resp. at 6–8. The Government argues that the administrative proceedings do not meet the definition of an adversary adjudication, because the "agency was not represented by counsel in an adversarial capacity" and "proceedings were not held pursuant to the Administrative Procedures Act[.]" *Id.* at 7. The court concurs. Those costs incurred by Plaintiff before October 6, 2003, are not recoverable, because, prior to that date, the attorney fees stem solely from actions related to administrative proceedings and lobbying Congress. *See* PX 4 at 1–3. Accordingly, Plaintiff can recover for 82.65 hours of the attorney time claimed. Notwithstanding, the court notes that Plaintiff's counsel has represented Plaintiff since March 16, 2000, providing 114.5 hours of service at the reasonable rate of $125 per hour.

### 2. Cost Of Living Adjustment.

The EAJA provides for a statutory cap of $125.00 per hour, but allows for adjustments, if "the court determines that an increase in the cost of living ... justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii); *see also KMS Fusion, Inc. v. United States,* 39 Fed.Cl. 593, 603 (1997) ("Whether to apply a cost-of-living adjustment ('COLA') is within the court's discretion."). When a plaintiff seeks a COLA, the "justification for such award is self-evident if the applicant alleges that the cost of living has increased, as measured by the United States Department of Labor's Consumer Price Index ('CPI')." *California Marine Cleaning, Inc. v. United States,* 43 Fed.Cl. 724, 733 (1999) ("declining to impose a requirement that an applicant must do more than request such an adjustment and present a basis upon which the adjustment should be calculated.").

In calculating a COLA, the court uses a base date of March 1996. *Id.* at 733–34 ("Although the Federal Circuit and other circuits have advocated use of October 1981

as the appropriate baseline, the selection of that particular month was tied indivisibly to the October 1, 1981 effective date of the $75 statutory cap in effect at the commencement of the underlying litigation. The EAJA, however, was amended in 1996, raising the statutory cap to $125.... Consequently[,] ... March 1996 is the proper baseline for calculation of a COLA to the $125 cap." (citations omitted)); *see also CEMS, Inc. v. United States*, 65 Fed.Cl. 473, 485 (2005) (holding that March 1996 is the proper base date for calculation of a COLA). The end date is the final date on which legal services were rendered. *See Doty*, 71 F.3d at 387 ("The cost of living adjustment is measured from ... the date of enactment of the EAJA, to the time the services were rendered." (citing *Chiu*, 948 F.2d at 722)).

■ In this case, Plaintiff suggests using a COLA with a base date of 1996 and an end date of July 2006. *See* Pl. AF at ¶ 10. The Government does not contest the use of a COLA, but insists that "the price adjustment should be based upon prices no later than June of 2005, when the majority of counsel's work on this case was completed with plaintiffs' filing of their reply brief." *See* Gov't AF Resp. at 8 (citing *Chiu v. United States*, 948 F.2d at 719–722). The end date for calculating a COLA, however, is the final date on which all legal services were rendered, not just the "majority" of legal services. *See Doty*, 71 F.3d at 387 (citing *Chiu*, 948 F.2d at 722). After the court issued an initial decision on August 31, 2005, Plaintiff's counsel continued to provide settlement related legal services, until the court issued the final decision on January 31, 2006. Additionally, on April 19, 2006, the Government filed

an appeal of the court's decision with the United States Court of Appeals for the Federal Circuit, but withdrew that appeal on August 7, 2006. *See* PX 2. In response, Plaintiff's counsel provided legal services until August 10, 2006. *See* PX 2; PX 3. Moreover, the Government does not contest the attorney hours devoted to addressing the Government's appeal, but still objects to using the corresponding time period (2006) to calculate the COLA. *See* Gov't AF at 8 ("Excluding time related to [administrative proceedings] results in 82.65 hours of attorney time recoverable if the Court finds that the Government's position was not substantially justified[.]").

■ The court has determined that Plaintiff overestimates the COLA by applying the July 2006 CPI to every year in which legal services were rendered. Instead, the court has determined that the proper calculation uses the arithmetic mean of the COLA's for every month that services were rendered, from October 2003 to August 2006.[3] *See California Marine Cleaning, Inc.*, 43 Fed.Cl. at 734 (using arithmetic mean of the CPI to adjust attorney fees for the four months in which services were rendered). Although Plaintiff did not provide CPI figures for each year, the court takes judicial notice of the Department of Labor's "Bureau of Labor Statistics Data," pursuant to Federal Rule of Evidence 201. *See* Bureau of Labor Statistics, United States Department of Labor, http://data.bls.gov/cgi-bin/surveymost (last visited Nov. 20, 2006);[4] *see also* FED R. EVID. 201.

Hourly Fee Rate with COLA:

$$\$125 \times \frac{\text{average (October 2003–August 2006)CPI–U}}{\text{March 1996 CPI–U}} = \$125 \times \frac{186.6}{155.7} = \$149.80$$

3. Theoretically, attorney fees billed each month should be adjusted using the corresponding CPI. In this case, however, the court uses the mean of the CPI for each month, because attorney fees are evenly distributed throughout the period of service. *See California Marine Cleaning, Inc.*, 43 Fed.Cl. at 734 (stating fees should be adjusted based upon the CPI datum for each month, but uses the arithmetic mean of the CPI for the four months services were rendered because attorney

fees were evenly distributed (citing *Chiu*, 948 F.2d at 722)).

4. The court uses the CPI for "All Urban Consumers" ("CPI–U") in the "urban South," because Plaintiff and Plaintiff's counsel reside in Louisiana. Under the CPI categories all "consumers" are considered "urban."

### 3. Other Expenses.

Plaintiff also has submitted itemized cost statements for "professional expenses," such as legal research, photocopies, postage, faxes, and court filing fees. *See* PX 4 at 7. Again, the Government, "objects to reimbursement for any expenses that were incurred during the administrative proceedings." Gov't AF Resp. at 8. As previously discussed, Plaintiff may not recover for expenses related to administrative proceedings. Therefore, the court has determined that Plaintiff is entitled to reimbursement only for "professional services" incurred after October 6, 2003, in the amount of $406.91.

### 4. Plaintiff's Total Award.

Accordingly, the court awards Plaintiff the following, pursuant to the EAJA:

Attorney's Fees: 82.65 hours × 149.80/hr. = $12,380.97
Other Fees (Professional Services): $ 406.91

TOTAL: $12,787.88

## III. CONCLUSION.

For the aforementioned reasons, the court grants Plaintiff's September 1, 2006 Motion For Attorney Fees, pursuant to the EAJA, and the Clerk of the Court is directed to enter a final judgment in favor of Plaintiff consistent with this opinion in the amount of $12,787.88 for reimbursable fees and expenses.

**IT IS SO ORDERED.**