Maria DEMUTIIS and Nicolas
Demutiis, Plaintiffs–
Appellees,

v.

UNITED STATES, Defendant–
Appellant.

No. 01–5041.

United States Court of Appeals,
Federal Circuit.

May 30, 2002.

John P. Tynan, Worth, Longworth, Bamundo & London, LLP, of New York, NY, argued for plaintiffs-appellees.

Kyle E. Chadwick, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director. Of counsel was Deborah A. Bynum, Attorney.

Before GAJARSA Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LINN, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This appeal presents questions relating to the way the Department of Justice ("Department") determined whether a local police officer's death occurred "in the line of duty" and therefore met the standard for an award of death benefits under the Public Safety Officers' Benefits Act (the "Benefits Act") of 1976, Pub.L. No. 94–430, 90 Stat. 1346 (codified as amended at 42 U.S.C. §§ 3796–3796c (1994)). The Court of Federal Claims reversed the Department's denial of benefits and remanded for further proceedings. The court ruled that (1) the Department's hearing officer had an affirmative obligation to develop the record in support of a claim for benefits, and that the Department failed to give proper weight to both (2) the local police department's decision that the officer's death occurred in the line of duty and (3) factual determinations in the police department's reports of the event. We disagree with the court's first two rulings, but affirm the third. Accordingly, we modify the remand decision of the Court of Federal Claims and, as thus modified, affirm it.

I

A. The Benefits Act provided for a Federal payment of $100,000 to the surviving spouse and children of a public safety officer (which includes a police officer, 42 U.S.C. § 3796b(5)) who "ha[d] died as the direct and proximate result of a personal injury sustained in the line of duty." 42 U.S.C. § 3796 (1994). Administration of the Act is assigned to the Department of Justice's Bureau of Justice Assistance ("Bureau"). *Id.* Pursuant to statutory authority, *id.* § 3796c(a), the Bureau has promulgated detailed regulations that define various terms in the statute and prescribe the administrative procedures the Bureau will follow in adjudicating claims under the Act. 28 C.F.R. § 32.1.40 (2001). Those regulations provide that a police officer's injury occurred "in the line of duty" if it arose out of "[a]ny action which [the] officer ... [was] obligated or authorized by rule, regulations, condition of employment or service, or law to perform." *Id.* § 32.2(c)(1).

A claimant seeking death benefits under the Act must file a claim with the Bureau, which will preliminarily determine eligibility for benefits. *Id.* § 32.23. A claimant who is ruled ineligible for benefits may obtain a hearing before a Departmental Hearing Officer, whose decision is re-

viewable by the Director of the Bureau. *Id.* § 32.24(a), (h)(1). The Director's decision is the Bureau's final decision. *Id.* § 32.24(h)(2). That decision is judicially reviewable by suit in the Court of Federal Claims. *See, e.g., Davis v. United States,* 169 F.3d 1196, 1197 (9th Cir.1999); *Wydra v. Law Enforcement Assistance Admin.,* 722 F.2d 834, 837 (D.C.Cir.1983); *see also Yanco v. United States,* 258 F.3d 1356 (Fed.Cir.2001).

B. The underlying facts are set out in detail in the Court of Federal Claims' opinion. *See Demutiis v. United States,* 48 Fed. Cl. 81 (2000). Only a brief recitation follows.

Police Officer Nicholas R. Demutiis ("Demutiis"), off duty and out of uniform, was driving to work in his personal vehicle on January 24, 1994, around eleven p.m. A few blocks from the precinct house, he entered an intersection on a green light and was struck by a vehicle entering the intersection against a red light. That vehicle was being pursued by police officers from Demutiis' precinct in police vehicles, and, according to civilian eyewitnesses, was traveling about seventy to ninety miles an hour with its lights off in the darkness when it collided with Demutiis' car. Demutiis was killed as a result of the crash.

The report of the New York City Police Department ("Police Department") on the incident, which was used to determine eligibility for worker's compensation and accidental death benefits, stated that Demutiis entered the intersection in "an apparent attempt to assist the On–Duty officers in apprehending the suspect vehicle," and thus that his death was "in the line of duty." *Demutiis,* 48 Fed. Cl. at 84. The Bureau, however, preliminarily denied benefits under the Act, based on its finding that Demutiis was most likely unaware of the chase, and probably had not been attempting to assist the other

officers. *Id.* It ruled that Demutiis' death was not in the line of duty, and thus did not qualify for benefits under the Act. *Id.*

Demutiis' wife and son, the appellees here, administratively appealed the preliminary determination. After an evidentiary hearing, the hearing officer concluded that the evidence did not show that Demutiis had entered the intersection in an attempt to aid the other officers, and thus that his death was not "in the line of duty." *Id.* at 84–85. After the Director of the Bureau upheld that ruling the appellees filed the present suit in the Court of Federal Claims, seeking benefits under the Act. They contended that "Demutiis was assisting his fellow officers by obstructing the path of the fleeing vehicle." *Id.* at 83.

On cross-motions for summary judgment, the Court of Federal Claims ruled that the Bureau's decision was "in some respects, contrary to law, and, in others, not supported by substantial evidence." *Id.* at 98. It reversed that decision and remanded for the Bureau to conduct "further proceedings leading to a redetermination of plaintiffs' eligibility for compensation under the [Benefits Act] and its implementing regulations." *Id.*

The government's appeal challenges only three of the court's rulings: (1) the hearing officer did not comply with the requirement in the Bureau's regulation that the hearing be conducted "in such manner as to best ascertain the rights of the claimant" because he did not discharge his "active and affirmative responsibility to develop the record." *Id.* at 93. (2) The hearing officer failed to give adequate weight, as required by the Bureau's regulations, to the Police Department's determination that Demutiis' death occurred in the line of duty. (3) "[I]n several other instances" the hearing officer improperly

"failed to attach any weight to the fact findings of the city officials." *Id.* at 91.

The court also made two additional rulings, which the government does not challenge: (1) The Bureau misinterpreted and misapplied its regulation requiring it to resolve "any reasonable doubt arising from the circumstances of the officer's death or permanent and total disability in favor of payment of the death or disability benefit." *Id.* at 88. (2) Various findings of the Bureau were not supported by substantial evidence. *Id.* at 95–98.

## II

■■■ There is a preliminary jurisdictional question: whether the Court of Federal Claims' decision, which remanded the case to the Bureau for redetermination of Demutiis' eligibility for benefit payments, is a "final decision" over which we have appellate jurisdiction under 28 U.S.C. § 1295(a)(3). Generally, remand orders are not final and hence are not appealable. *Cabot Corp. v. United States,* 788 F.2d 1539, 1542 (Fed.Cir.1986) (noting that "an order remanding a matter to an administrative agency for further findings and proceedings is not final"); *see also Caesar v. West,* 195 F.3d 1373, 1374 (Fed.Cir.1999). A remand order is appealable, however, "when a court determines that an agency's statutory or regulatory interpretation is unreasonable or contrary to law, and remands the matter to the agency to implement the court's alternative interpretation." *Southern Cal. Edison Co. v. United States,* 226 F.3d 1349, 1355 (Fed.Cir.2000) (citing *Travelstead v. Derwinski,* 978 F.2d 1244, 1248–49 (Fed.Cir.1992)).

That is precisely the basis on which the Court of Federal Claims remanded to the Bureau in this case. The court concluded that the Bureau had misinterpreted its regulations, and remanded for "redetermination of plaintiff's eligibility for compensation under the [Benefits Act] and its implementing regulations, consistent with this opinion," *Demutiis,* 48 Fed. Cl. at 99, i.e., for the Bureau to reapply the Act and the regulations as the court had interpreted them.

In many, perhaps most, cases in which such remand orders have been held final, the result of a successful appeal is a reversal of the remand. Here, however, even if we were to accept all of the government's contentions, the remand order would still stand—although the scope of the remand would be narrower. This is because the government's appeal has not challenged some of the grounds on which the Court of Federal Claims based the remand.

This result, however, does not render the remand order non-final and non-appealable. The government's failure to challenge the other portions of the remand order does not change the nature of the portions the government does challenge, and those portions themselves make the order final and appealable. If the Bureau were to reconsider the case under the Court of Federal Claims' interpretation of the regulations, its decision on remand might not be reviewable. The government then would have the unfavorable precedent of the Court of Federal Claims in this case without opportunity to challenge it on appeal. *See Dambach v. Gober,* 223 F.3d 1376, 1379 (Fed.Cir.2000) ("Because this interpretation will alter the evidentiary burdens ... in the remand proceedings and the remand may make unreviewable [certain determinations], there is jurisdiction.").

## III

Section 32.24(c) of the Bureau's regulations states:

In conducting the hearing, the hearing officer shall not be bound by common law or statutory rules of evidence, by technical or formal rules of procedure,

or by Chapter 5 of the Administrative Procedure Act (5 U.S.C. 551 *et seq.*), but must conduct the hearing in such manner as to best ascertain the rights of the claimant. For this purpose, the hearing officer shall receive such relevant evidence as may be introduced by the claimant and shall, in addition, receive such other evidence as the hearing officer may determine to be necessary or useful in evaluating the claim. Evidence may be presented orally or in the form of written statements and exhibits. The hearing shall be recorded, and the original of the complete transcript shall be made a part of the claims record.

28 C.F.R. § 32.24(c) (2001).

The Court of Federal Claims interpreted this provision as imposing on the hearing officer an "active and affirmative responsibility to develop the record." It then cited several instances in which the hearing officer failed to "meet this important responsibility." *Demutiis,* 48 Fed. Cl. at 93. Among these were the fact that the hearing officer "made no attempt to obtain live testimony from these [civilian] witnesses to explain what they actually saw, so as to ensure that their statements truly were different from those of the officers, . . . [or] to obtain the written reports that the officers had earlier filed to see whether they corroborated the testimony," and that he "made no attempt to conduct a site visit to determine what Officer Demutiis might actually have seen." *Id.* at 94. The court stated in addition that the hearing officer "may not weigh gaps in the record against a claimant without first making reasonable attempts to obtain available evidence." *Id.*

█ We disagree with the Court of Federal Claims that this regulation requires the hearing officer affirmatively to develop the record. The subject matter of 28 C.F.R. § 32.24 is the hearing officer's "conducting [of] the hearing." It begins by stating that "[i]n conducting the hear-

ing," the hearing officer is not bound by rules of evidence or formal procedural rules, but "must conduct the hearing in such manner as to best ascertain the rights of the claimant." 28 C.F.R. § 32.24(c) (2001). It then states that "[f]or this purpose, the hearing officer shall receive such relevant evidence as may be introduced by the claimant and shall, in addition, receive such other evidence as the hearing officer may determine to be necessary or useful in evaluating the claim." *Id.*

The requirement that the hearing officer "must conduct the hearing in such manner as to best ascertain the rights of the claimant" relates to how the hearing is to be conducted, not to what additional functions the hearing officer must perform before deciding the case. The "conduct" of the hearing involves such questions as what evidence may be introduced, the order of proof, the scope of cross-examination, etc. The regulation directs the hearing officer to receive evidence introduced by the claimant and evidence offered by others that the hearing officer determines is "necessary or useful in evaluating the claim." It appears to contemplate a broad standard of relevancy, and also presumably permits the hearing officer to obtain and receive evidence that he deems "necessary or useful," even though none of the parties offers it.

Although the hearing officer has discretion to seek additional evidence, the regulatory requirement that he "conduct the hearing in such a manner as to best ascertain the rights of the claimant" cannot properly be read as imposing the additional affirmative obligation of obtaining further evidence to fill gaps in the claimant's case. The role of the hearing officer ordinarily is to conduct a hearing, not to investigate and develop a case. Neither the Benefits Act nor the regulations indicate

that the hearing officer under that Act is to perform anything other than his traditional role or to have the additional responsibility the Court of Federal Claims imposed upon him. If the presiding official is to be required affirmatively to assist the claimant in developing his case, far more explicit language would be required to impose that obligation.

An example of such explicit language is found in 28 C.F.R. § 32.5, discussed below. After stating that the Bureau "will give substantial weight to the evidence and findings of fact presented by State, local, and Federal administrative agencies," it provides: "The Bureau will request additional assistance or conduct its own investigation when it believes that the existing evidence does not provide the Bureau with a rational basis for a decision on a material element of eligibility." *Id.* § 32.5. Another example from a different statute is 38 U.S.C. § 5103A, which provides that the Secretary of Veterans Affairs "shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary." 38 U.S.C.A. § 5103A (West Supp.2001). Nothing in § 38.24(c) is comparable to those requirements imposing specific obligations to develop the evidence or assist the claimant.

Another Bureau regulation confirms that the hearing officer is not required to obtain additional evidence. Section 32.21 states that "[w]henever a claimant ... has submitted no evidence or insufficient evidence of any material issue or fact," the Bureau shall so inform the claimant and request him to submit such evidence. 28 C.F.R. § 32.21(b) (2001). It then states that a claimant's failure to submit such evidence "shall be a basis for determining that the claimant fails to satisfy the conditions required to award a benefit or fee or any part thereof." *Id.* This provision is inconsistent with the Court of Federal Claims' view that under the regulations the Bureau "may not weigh gaps in the record against a claimant without first making reasonable attempts to obtain available evidence." *Demutiis,* 48 Fed. Cl. at 94.

IV

Section 32.5 of the regulations states:

The Bureau will give substantial weight to the evidence and findings of fact presented by State, local, and Federal administrative and investigative agencies. 28 C.F.R. § 32.5 (2001).

The Court of Federal Claims held that the Bureau violated this provision in two respects: (A) it failed to give "substantial weight"—indeed, any weight—to the Police Department's determination that Demutiis' death occurred in the line of duty and (B) failed to give any weight to the factual findings of the Police Department. *Demutiis,* 48 Fed. Cl. at 91–93.

■ A. The Police Department's "line of duty" determination involved the same ultimate question as that under the Benefits Act—did Demutiis' death occur in the line of duty? That is a legal determination. *Cf. Davis v. United States,* 50 Fed. Cl. 192, 206, 208 (Fed.Cl.2001); *Chacon v. United States,* 32 Fed. Cl. 684 (1995), *aff'd,* 48 F.3d 508 (Fed.Cir.1995). The regulation, however, requires the Bureau to give substantial weight only to "the evidence and findings of fact presented by ... administrative and investigative agencies," not to their legal conclusions. Although the Bureau could give the Police Department's legal conclusion whatever weight, if any, it deemed appropriate, it was not required to give it any weight. Of course, the Police Department's legal line of duty determination rested on subsidiary factual determinations to which, as we discuss be-

low, the Bureau was required to give substantial weight.

The Court of Federal Claims relied heavily on *Harold v. United States*, 225 Ct.Cl. 168, 634 F.2d 547 (1980), in ruling that the Bureau erred in failing to give substantial weight to the Police Department's line of duty determination. *Harold* involved a police officer who was killed when his loaded police revolver was discharged while he was cleaning it. The question was whether the officer's gross negligence precluded a determination that his death occurred in the line of duty. Our predecessor court ruled that it did not. The court's precise ruling was as follows:

> In sum, we conclude that the legislative history of the Act shows that Congress did not intend that the term "line of duty" should exclude instances in which the death of a safety officer is caused by his gross negligence in the performance of his duties. To the contrary, we think Congress recognized the distinction between the nature of the acts being performed at the time of an officer's death and the manner in which they were being performed, and that except for deaths due to intentional misconduct and intoxication, Congress intended only the nature of the acts to be relevant to a determination of whether the death occurred in the line of duty.

*Id.* at 552 (footnote omitted).

*Harold* thus involved the substantive question whether grossly negligent conduct could be in the line of duty. The Court of Claims answered that question affirmatively. The present case, however, does not involve any question about the substantive content of the "line of duty" concept. Instead, it involves the quite different question of what weight the Bureau was required to give to the Police Department's line of duty ruling. *Harold* does not answer that question.

■ B. We agree with the Court of Federal Claims, however, that the Bureau improperly ignored the Police Department's factual determinations and the evidence upon which they rested. This included the testimony of the two officers in the pursuing vehicle that they saw Demutiis' vehicle come to a stop in the intersection before it was hit, the statements in the police reports that civilians at the scene stated that immediately before the collision Demutiis' vehicle was going "slow" or "not very fast," and photographs of the scene of the accident that allegedly indicated whether Demutiis could or could not have seen the approaching fleeing vehicle before his car entered the intersection.

The government contends that the factual findings in the police reports are highly speculative because they are inconsistent with the statements made by the civilian eyewitnesses, and that the Bureau therefore properly ignored them. That contention, however, goes to the weight the Bureau could give those findings, not to whether it could ignore them. The regulation states that the Bureau will give not just weight, but "substantial" weight, to such findings. Although the Bureau may have some discretion to determine the weight to be accorded those findings and evidence, it must accord them at least "substantial" weight and cannot ignore them.

## CONCLUSION

The remand order of the Court of Federal Claims is modified as set forth in this opinion to eliminate the requirements (1) that the hearing officer develop the record in support of the claimant and (2) that the Bureau give substantial weight to the Police Department's determination that Demutiis' death occurred in the line of duty.

With these modifications, the order is affirmed.

*AFFIRMED AS MODIFIED.*