Shonda Scott HILLENSBECK and
Samantha Scott, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 04–1455C.

United States Court of Federal Claims.

Jan. 31, 2006.

Timothy E. Pujol, Brittany A. Keaton, Pujol & Pryor, Prairieville, Louisiana, for Plaintiffs.

Michael J. Dierberg, United States Department of Justice, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

BRADEN, Judge.

Congress could not have been more explicit as to the purpose of the Public Safety Officers' Benefits Act ("PSOBA"), 42 U.S.C. §§ 3796, *et seq.*, nor Congress' intent and expectations regarding implementation:

> The motivation for this legislation is obvious: The physical risks to public safety officers are great; the financial and fringe benefits are not usually generous; and the officers are generally young with growing families and heavy financial commitments. The economic and emotional burden placed on the survivors of a deceased public safety officer is often very heavy. The dedicated public safety officer is concerned about the security of ... family, and to provide the assurance of a Federal death benefit to ... survivors is a very minor recognition of the value our government places on the work of this dedicated group of public servants.

S.Rep. No. 94–816, at 3–4, *reprinted in* 1976 U.S.C.C.A.N. 2504, 2505.

In this case, the court has determined that Ms. Debora Scott was a "public safety officer," who died as a direct and proximate result of a personal injury sustained in the line of duty. *See* 42 U.S.C. § 3796(a).

## RELEVANT FACTS [1]

In 1999, Ms. Debora Scott, a licensed Emergency Medical Technician–Basic ("EMT–Basic"),[2] was enrolled in the Emer-

---

1. The relevant facts herein were previously discussed in *Hillensbeck v. United States*, 68 Fed.Cl. 62 (2005) ("*Hillensbeck I*"), and derived from: Plaintiffs' September 14, 2004 Complaint ("Compl."); the United States' ("Government") November 9, 2004 Answer ("Answer"); the March 17, 2005 Amended Administrative Record ("AR"); the Government's March 17, 2005 Motion for Judgment on the Administrative Record ("Gov't Motion J. AR"); Plaintiffs' May 2, 2005 Cross–Motion for Judgment Upon the Administrative Record ("Pl.Cross–Motion"); the Government's May 31, 2005 Response to Plaintiffs' Cross–Motion for Judgment Upon the Administrative Record and Reply ("Gov't Response"); and Plaintiffs' June 10, 2005 Reply ("Pl.Reply").

2. Two categories of Emergency Medical Technicians are recognized by the State of Louisiana: EMT–Basics and EMT–Paramedics. *See* AR Ex. 10 at 39. An EMT–Basic has completed an education program and, although state-certified and state-registered, can only perform paramedic services in the presence of an EMT–Paramedic, *e.g.*, administering narcotics and I.V. injections and

gency Health Science Program at Our Lady of the Lake College in Baton Rouge, Louisiana ("College"), studying to become a licensed EMT–Paramedic. *See* AR Ex. 3. She had a grade point average of 3.68 on a 4.00 scale. *Id.* The College entered into an EMT Field Internship Agreement ("Agreement") with the East Baton Rouge Parish Fire Department Emergency Medical Services ("EBRP EMS"), to enable EMT–Basic students to participate in EBRP EMS field clinical programs. *See* AR Ex. 5. During the field clinicals, EMT–Basics accompany and work under the direct supervision of EMT–Paramedics, as a part of ambulance crews responding to medical emergencies. *Id.; see also* AR Ex. 10 at 36.

On November 13, 1999, Ms. Debora Scott was participating in a field clinical with the EBRP EMS when the ambulance to which she was assigned was involved in an accident, caused by a drunk driver. *See* AR Ex. 3. Ms. Debora Scott suffered severe injuries from the accident and died on November 14, 1999. *Id.* She was thirty-six years old and, at the time of her death, had two daughters, Shonda Scott Hillensbeck and Samantha Scott, respectively ages twenty-one and seventeen. *See* AR Ex. 1–2.

### PROCEDURAL HISTORY

#### A.  Initial Determination Of The Bureau Of Justice Assistance.

On May 8, 2000, the College forwarded documents verifying Ms. Debora Scott's enrollment in the EBRP EMS Program to the United States Department of Justice Office of Justice Programs, Bureau of Justice Assistance ("BJA"), together with a letter describing the duties that she performed during her participation with the field clinical program. *See* AR Ex. 3. On May 17, 2001, Ms. Debora Scott's daughters filed a claim with the BJA for survivor benefits, under the PSOBA. *See* AR Ex. 1.

On June 8, 2001, BJA issued a Claim Determination that:

> Debora Lynn Scott is not covered under the provisions of the [PSOBA], as amended, (42 U.S.C. 3796) ... Specifically, Ms.

Scott was not a "public safety officer" as defined by the PSOB Act. At the time of her death, she was a student at Our Lady of the Lake College, studying to be a paramedic. Ms. Scott was required to participate in field clinicals in order to complete the program. She was not a sworn member of a rescue squad or ambulance crew. The agreement between the College and the [EMS] was only an avenue to provide students with the opportunity to gain some experience as part of a program of study in paramedics. The "clinical" with the EMS did not constitute "serving a public agency." At all times, Ms. Scott was a student at the College and was not serving a public agency while participating in the clinical with the EMS. Accordingly, Ms. Debora Lynn Scott's survivors are ineligible to receive the benefit authorized by the Act.

AR Ex. 9.

#### B.  Decision Of A Bureau Of Justice Assistance Hearing Officer.

Ms. Debora Scott's daughters requested reconsideration of the BJA's initial determination. *See* 28 C.F.R. § 32.24(a). On February 5, 2002, a hearing was convened. *See* AR Ex. 10. On June 26, 2002, a BJA Hearing Officer issued a Determination of Reconsideration. *See* AR Ex. 11. The specific Findings of Fact and Conclusions of Law determining that Ms. Scott's daughters were entitled to receive survivor benefits under the PSOBA are set forth below:

##### *Findings of Fact*

1.  [T]he evidence establishes that the East Baton Rouge Parish ... Bureau of Emergency Medical Services (EMS) is a public agency, within the coverage of the Act[.]

2.  I find that the decedent, Debora Lynn Scott, was a licensed Emergency Medical Technician (EMT), certified by the state as an EMT–Basic, as well as a student enrolled and in good standing in a nationally-approved paramedic study program (College EMT Program); and, at the time of her death,

participating directly in patient care. *Id.* at 18–19.

Ms. Scott was, by written Agreement, an EMS Intern, on duty, riding in an EMS vehicle, and appearing on the duty roster as an unpaid member of the EMS ambulance crew.

3. I find that the Field Internship Agreement (the Agreement) between the EMS and Our Lady of the Lake College, Emergency Health Science Program (College EMT Program) officially authorizes students of the College EMT Program to "assist in the daily operations" of the EMS as EMS Interns under the supervision of an EMS Paramedic.

4. I further find that "the daily operations" of the EMS required the Intern to act and function as a member of the EMS ambulance crew; to assist the EMS by performing all paramedic duties for which he/she is trained and licensed by the State; and to follow all rules and procedures as ordered by the certified Paramedic.

5. By virtue of Louisiana law, [LA. REV. STAT § 40:1234A] ... Debora Scott, as a State licensed and certified EMT–Basic, enrolled in a U.S. Dept. of Transportation-approved paramedic study program was authorized by the EMS to perform all advanced paramedic functions when in the presence of a certified paramedic employee. Thus ... Ms. Scott was at all times, while on duty, acting under the control of the public agency.

6. [T]he specific terms of the [College and EMS] Agreement provide that the physician EMS Medical Director assumes responsibility for the quality of patient care given by employees in providing emergency medical services to the public. Thus, ... the Medical Director's responsibility would extend to the patient care and treatment by EMS Intern Debora Scott, who was performing similar services as, and in the presence of EMS Certified Paramedic employees.

7. Thus, ... Ms. Scott's status in the EMS ambulance on November 13, 1999, was more than that of a "ride-along" "student volunteer" but rather her presence as an EMS Intern was in her capacity as an unpaid trained and State certified Emergency Medical Technician functioning as part of the EMS ambulance crew.

8. In addition, I find that the Agreement was not "only an avenue to provide students an opportunity to gain some experience" as stated in the PSOB denial; but, rather the Agreement was also to provide the public agency, in exchange, the services and assistance of trained emergency medical technicians, at no cost.

9. Finally, I find that Ms. Scott's relationship with the public agency was not strictly that of a volunteer inasmuch as she received some benefit for her service, i.e. field experience.

### Conclusions of Law

1. Based on the foregoing, I conclude that The Field Internship Agreement in this case is clearly distinguishable from the usual private contract case, where the individual providing services is employed by the private contractor, paid by the private contractor, and is under the control of the private contractor. Here, I find the Agreement is one of cooperation, where the public agency is fully aware that in cloaking a trained paramedic student/Intern with its authorization to act alongside its public employee paramedics, performing similar services as its employees, it is treating the Intern as a functional part of the agency.

• Thus I conclude that Ms. Scott clearly meets the requirements of PSOB for serving a public agency, in an official capacity, as the evidence shows she was in *a relationship similar to that of an employee performing services as a part of a public agency;* and

• I conclude, also, that in authorizing Ms. Scott to perform medical services on its behalf, as part of its ambulance crew ... the agency officially recognized and designated Ms. Scott as

*"functionally within or a part of the public agency."*

3. Therefore, based on the above, I conclude that Ms. Scott was an individual serving a public agency, in an official capacity, without compensation, as an ambulance crew member and thus meets the requirements of a Public Safety Officer, as defined by the Act.

4. I further conclude that Ms. Scott's death occurred in the "line of duty," as defined by the Act, inasmuch as she was performing the duties required of her by the rules, regulations and conditions of her service, as authorized by the public agency and on behalf of the public agency.

AR Ex. 11 at 11–13.

## C. Final Decision Of The Acting Director Of The Bureau Of Justice Assistance.

On June 26, 2003, the BJA's Acting Director issued a Final Decision, reversing the June 26, 2002 Determination of Reconsideration. *See* AR Ex. 13. The Final Decision relied on the same findings of fact as the June 26, 2002 BJA Hearing Officer's Determination of Reconsideration, but concluded, as a matter of law, that Ms. Debora Scott was not a "public safety officer," as defined by 42 U.S.C. § 3796b(8)(A):

### Conclusions of Law

1. In order to qualify for the PSOB Act death benefit, a claimant must demonstrate that a "public safety officer [was] found to have died as the direct and proximate result of a personal injury sustained in the line of duty[.]"

2. The term "public safety officer" means an "individual *serving a public agency in an official capacity,* with or without compensation, as a law enforcement officer, as a firefighter, as a chaplain, or as a member of a rescue squad or ambulance crew[.]"

3. While the PSOBA does not specifically define "member of a rescue squad or ambulance [crew]," the statutory definition of "firefighter" encompasses: "an individual serving [as] an officially recognized or designated *public em-*

*ployee member* of a rescue squad or ambulance crew[.]"

4. 42 U.S.C. § 3796b(4) makes PSOBA death benefits available only to deceased public employee members of rescue squads or ambulance crews.

5. To the extent that the 28 C.F.R. 32.2(*o*) definition of "rescue squad or ambulance crew member" is construed by the hearing officer so as not to require that the ambulance crew public safety officer be a "public employee member" of such crew or squad at the time of death, I find such regulatory interpretation to be contrary with the requirements of 42 U.S.C. § 3796(b), subordinate to statutory interpretation and, thus, inapplicable in this matter.

6. The meaning of the language "serving a public agency in an official capacity," as that language is used to define a "public safety officer," 42 U.S.C. § 3796b(8)(A), was explained by the Federal Circuit in *Chacon v. U.S.*, 48 F.3d 508, 511 (Fed.Cir.1995), as follows:

In order to be serving a public agency in an official capacity one must be an officer, employee, volunteer, or similar relationship of performing services as part of a public agency. To have such a relationship with a public agency, an individual must be officially recognized or designated as *functionally within or part of the public agency.*

7. That Ms. Scott was performing as a student, and not a public employee member of an ambulance crew, is underscored by the fact that at the state and local level Ms. Scott's survivors were determined to be ineligible for death benefits that would otherwise be made available to survivors of public employee members of the East Baton Rouge EMS who die in the line of duty.

8. Ms. Scott was not serving the EMS, the subject public agency, "in an official capacity" [because] she was not "functionally within or a part of the public agency," East Baton Rouge Parish, Department of Emergency Medi-

cal Services. Rather, at the time of her death, she was engaged in actions necessary to fulfill curriculum obligations as a paramedic student ... Nowhere in the legislative history of the PSOBA is there any indication that Congress wanted this Federal benefit to be made available to students[.]

9. As the decedent in this matter was not a public employee member of an ambulance crew at the time of her death, the factual record is legally insufficient to show that Ms. Scott was serving a public agency in an official capacity at the time of her death and, thus, her death is not covered by the PSOBA. In brief, Ms. Scott was not a "public safety officer" under the terms of this Act.

AR Ex. 13 (emphasis in original).

### D. In The United States Court Of Federal Claims.

■ On September 14, 2004, Ms. Debora Scott's daughters, Shonda Scott Hillensbeck and Samantha Scott ("Plaintiffs"), timely filed a Complaint in the United States Court of Federal Claims seeking: $250,000, or the proper amount allowed under the PSOBA, adjusted to reflect the annual percentage change in the Consumer Price Index for All Urban Consumers, as provided in 42 U.S.C. § 3796(h); attorneys fees; interest on all benefits and attorneys fees from the date of judicial demand until paid; and other damages and relief that the court may deem just and proper. *See* Compl. ¶¶ 10–13. The case was assigned to the undersigned judge.

On November 9, 2004, the Government filed an Answer.

On February 7, 2005, the Government filed a copy of the Administrative Record. On March 17, 2005, the Government filed a corrected copy of the Administrative Record, a Motion for Judgment on the Administrative Record, and a Statement of Facts in support.

On May 2, 2005, Plaintiffs filed a Cross-Motion for Judgment upon the Administrative Record. On May 31, 2005, the Government filed a Response. On June 10, 2005, the Plaintiffs filed a Reply.

On August 31, 2005, the court issued a Memorandum Opinion and Order denying the Government's Motion for Judgment on the Administrative Record and granting Plaintiffs' Cross–Motion, as to Plaintiff Samantha Scott. *See Hillensbeck I,* 68 Fed.Cl. at 74. The court noticed that the Administrative Record did not contain any documents that evidenced Plaintiff Shonda Scott Hillensbeck's standing under 42 U.S.C. § 3796b(3)(ii). *Id.* at 68–69. Accordingly, the court permitted Plaintiff Shonda Scott Hillensbeck sixty days in which to establish standing, by submitting evidence verifying that she was a student on November 13, 1999, as defined in 5 U.S.C. § 8101. *Id.* at 69.

In a letter dated December 9, 2005, counsel for Plaintiffs represented that there was no "evidence that [Plaintiff Shonda Scott Hillensbeck] was a student as defined in Section 8101 of Title 5 on November 13, 1999." Therein, counsel for Plaintiffs requested the court to enter final judgment in the case.

At the request of the court, the parties filed a Joint Statement on January 6, 2006 regarding the amount to which Plaintiff Samantha Scott was entitled, as a result of the court's initial decision in *Hillensbeck I.* In the parties' Joint Statement, the parties agreed that the amount due is $146,949.00, assuming the judgment is affirmed on appeal. The Government, however, advised the court that "the appropriate procedure, assuming that the Bureau of Justice Assistance ('BJA') erred in concluding that [Plaintiff] Debora Scott was not a public safety office, is to remand to the agency to issue a decision consistent with this Court's opinion." The Government cited *Demutiis v. United States,* 291 F.3d 1373 (Fed.Cir.2002) and *Bice v. United States,* 61 Fed.Cl. 420 (Fed.Cl.2004) in support. In *Demutiis,* the United States Court of Appeals for the Federal Circuit modified a decision of the United States Court of Federal Claims, but remanded the matter to the BJA for further proceedings, because the hearing officer failed to give proper weight to the factual determinations in the police department's reports. *Demutiis,* 291 F.3d at 1380–81. Likewise the United States Court of Federal Claims, in *Bice,* re-

manded the matter for reconsideration in light of the court's ruling that BJA improperly disregarded evidence favorable to the plaintiff. *See Bice,* 61 Fed.Cl. at 437.

The circumstances of this case do not warrant a remand. On June 26, 2002, a BJA Hearing Officer issued a Determination of Reconsideration that made specific Findings of Fact and Conclusions of Law and determined that Plaintiffs were entitled to receive survivor benefits under the PSOBA are set forth in their entirety. *See* AR Ex. 11. Pursuant to 28 C.F.R. Part 32.24(h)(2), the BJA's Acting Director reviewed the June 26, 2002 Determination of Reconsideration, only considering the issue of "whether the decedent was a public safety officer at the time of her death, which, if she were, would entitle the claimants to the PSOB death benefit." AR Ex. 13. On June 26, 2003, the BJA's Acting Director issued a Final Decision, reversing the June 26, 2002 Determination of Reconsideration. *Id.* The Final Decision relied on the same findings of fact as the June 26, 2002 Determination of Reconsideration, but concluded, as a matter of law, that Ms. Debora Scott was not a "public safety officer," as defined by 42 U.S.C. § 3796b(8)(A). *Id.* Since the court, in *Hillensbeck I,* reversed the Acting Director's June 26, 2003 Final Decision that Ms. Scott was not a "public safety officer," no further action is now required by the Bureau of Justice Assistance other than to pay the judgment or appeal. Therefore, on January 11, 2006, the court convened a telephone conference to discuss the substance of the Joint Statement, since it indicated that Plaintiff did not object to a remand, and to advise the parties that the court calculated the amount due as $146,949.60. Plaintiff's counsel advised the court that he misperceived the significance of a remand and requested permission to withdraw consent and file a separate motion.

On January 12, 2006, Plaintiff Samantha Scott filed a Motion to Withdraw the January 6, 2006 Joint Statement. In that Motion, Plaintiff Samantha Scott asserted that she is entitled to a final judgment of $146,949.60. On January 18, 2006, the Government filed a Response, explaining that it did not oppose Plaintiff Samantha Scott's Motion, but re-

stated the Government's position that Plaintiff Samantha Scott is entitled to receive $146,949.00, assuming the court's judgment survives appeal. On January 20, 2006, the court granted Plaintiff's Motion.

## DISCUSSION

### A. Jurisdiction.

The Tucker Act provides the United States Court of Federal Claims with "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). Therefore, in order to come within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States,* 386 F.3d 1091, 1094 (Fed.Cir.2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act."); *see also Roth v. United States,* 378 F.3d 1371, 1384 (Fed.Cir.2004) ("Because the Tucker Act itself does not provide a substantive cause of action, . . . a plaintiff must find elsewhere a money-mandating source upon which to base a suit.").

In this case, the United States Court of Federal Claims has jurisdiction over Plaintiffs' claims because the Complaint properly invoked both the Tucker Act, *i.e.,* the "specific statute [that] sets the court's jurisdictional parameters" and the PSOBA, *i.e.,* "a separate statute [that] establishes the right that allegedly has been breached." *Fisher v.*

*United States,* 364 F.3d 1372, 1376 (Fed.Cir. 2004).

### 1. Statute Of Limitations Considerations.

■ A claim for benefits on behalf of a survivor of a deceased public safety officer must be filed within one year after the date of death unless the time for filing is extended by the BJA Director for good cause shown. *See* 28 C.F.R. § 32.20(c). In this case, Ms. Debora Scott's daughters did not file a claim for survivor benefits until June 22, 2001, more than a year after the death of Ms. Debora Scott on November 14, 1999. *See* AR Ex. 1. The BJA, however, accepted the claim and subsequently issued three decisions, none of which challenged Plaintiffs' claim as time-barred. *See* AR Ex. 9, 11, 13. Therefore, the court has determined that the BJA Director exercised discretion under 28 C.F.R. § 32.20(c) to allow the filing of Plaintiff Samantha Scott's claim for good cause.

The statute of limitations for initiating a claim in the United States Court of Federal Claims is six years after the claim first accrues. *See* 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."). A claim under the Tucker Act first accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.,* when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for ... money." *Chambers v. United States,* 417 F.3d 1218, 1223 (Fed.Cir.2005) (citation omitted).

Since all events to fix the Government's alleged liability and entitle the Plaintiffs to

sue did not accrue until June 26, 2003, the date that the BJA Acting Director's Final Decision was issued, the court has determined that the September 14, 2004 Complaint was filed well within the six-year Tucker Act statute of limitations and the United States Court of Federal Claims has jurisdiction to adjudicate the survivor benefit claim at issue in this case.

### 2. Ripeness Considerations.

The Administrative Record evidences that Plaintiff Samantha Scott exhausted all available administrative remedies before this action was filed. *See* AR Ex. 9, 13. Accordingly, this matter is now ripe for judicial review.

### 3. Standing Considerations.

■ The PSOBA provides that "the Bureau shall pay a benefit ... if there is no surviving spouse, to the child or children of such officer in equal shares." 42 U.S.C. § 3796(a)(3). Ms. Scott was not married at the time of her death and did not have children from a previous marriage. *See* AR Ex. 1. At the time of Ms. Debora Scott's death, Plaintiff Samantha Scott was her only child 18 years of age or under. *See* AR 1, 2. Therefore, Plaintiff Samantha Scott has standing to bring this action in the United States Court of Federal Claims. *See* 42 U.S.C. § 3796b(3)(i).

Since the court's August 31, 2005 Memorandum Opinion and Order in *Hillensbeck I,* the court has been advised of facts that evidence Plaintiff Shonda Scott Hillensbeck was not a student, as defined in Section 8101 of Title 5,[3] on November 13, 1999, and, therefore, does not have standing to bring this action. Since the court does not have jurisdiction over Plaintiff Shonda Scott Hillens-

---

3. "Student" is defined under Title 5 as:
   an individual under 23 years of age who has not completed 4 years of education beyond the high school level and who is regularly pursuing a full-time course of study at an institution which is—
   (A) a school or college or university operated or directly supported by the United States, or by a state or local government or political subdivision thereof;
   (B) a school or college or university which has been accredited by a State or by a State-recognized or nationally-recognized accrediting agency or body;
   (C) a school or college or university not so accredited but whose credits are accepted, on transfer, by at least three institutions which are so accredited, for credit on the same basis as if transferred from an institution so accredited; or
   (D) an additional type of educational or training institution as defined by the Secretary of Labor.
   Such an individual is deemed not to have ceased to be a student during an interim between school years if the interim is not more than 4 months and if [that individual] shows to

beck's claim, it is dismissed. Plaintiff Samantha Scott, however, has established standing to proceed and the court has jurisdiction to adjudicate her claim. *See Hillensbeck I,* 68 Fed.Cl. at 68.

## B. Standard For Decision.

### 1. On A Motion For Judgment On The Administrative Record.

The standard for a decision on a Motion for Judgment on the Administrative Record, pursuant to RCFC 56.1, is similar but not identical to a motion for summary judgment, filed pursuant to RCFC 56. *See Bannum, Inc. v. United States,* 404 F.3d 1346, 1355 (Fed.Cir.2005). The court's inquiry on a motion for summary judgment is whether the moving party has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In contrast, the standard for a decision on a Motion for Judgment on the Administrative Record is narrower, *i.e.,* given all the disputed and undisputed facts, whether the plaintiff has met the burden of proof to show that the decision was not in accordance with the law. *See Bannum,* 404 F.3d at 1357 (instructing the trial court to make "factual findings under RCFC 56.1 from the [limited] record evidence as if it were conducting a trial on the record").

### 2. On A Final Decision From The Bureau Of Justice Assistance.

■ The United States Court of Appeals for the Federal Circuit has held that judicial review of a BJA denial of death benefits under the PSOBA is "limited to three inquiries: '(1) whether there has been substantial compliance with statutory . . . and implementing regulations; (2) whether there has been any arbitrary or capricious action on the part of the Government officials involved; and (3) whether there was substantial evidence supporting the decision.'" *Chacon v. United States,* 48 F.3d 508, 511–12 (Fed.Cir. 1995) (quoting *Morrow v. United States,* 227 Ct.Cl. 290, 647 F.2d 1099, 1102 (1981), *cert. denied,* 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 247 (1981)).

## C. The Public Safety Officers' Benefits Act, 42 U.S.C. §§ 3796, *et seq.*

The PSOBA provides a one-time cash payment to survivors of public safety officers who die in the line of duty: "In any case in which the Bureau of Justice Assistance . . . determines . . . that a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty, the Bureau shall pay a benefit[.]" 42 U.S.C. § 3796(a).[4] For a survivor or survivors to qualify for the payment: (1) a public safety officer; (2) must have suffered a "personal injury" within the meaning of the PSOBA; (3) the injury must have been suffered "in the line of duty;" and (4) the death must have been "the direct and proximate result" of the personal injury. *Id.*

In this case, the only contested issue is whether Ms. Debora Scott was a "public safety officer." *See* Gov't Motion J. AR; *see also* AR at 1.

## D. The Court's Resolution Of The Government's Motion And Plaintiffs' Cross–Motion For Judgment On The Administrative Record.

### 1. The Bureau Of Justice Assistance's Final Decision Did Not Comply With Congress' Statutory Definition Of "Public Safety Officer."

Congress defined "public safety officer," in relevant part, as "an individual serving a

---

the satisfaction of the Secretary that [individual] has a bona fide intention of continuing to pursue a full-time course of study or training during the semester or other enrollment period immediately after the interim or during periods of reasonable duration during which, in the judgment of the Secretary [of Labor that the individual] is prevented from factors beyond [the individual's] control from pursuing [an] education. A student whose 23rd birthday occurs during a semester· or other enroll-

ment period is deemed a student until the end of the semester or other enrollment period[.] 5 U.S.C. § 8101(17).

4. As of November 13, 1999, the date of Ms. Debora Scott's death, the total PSOBA survivor benefit available was $100,000, as adjusted for inflation according to the Consumer Price Index for all Urban Consumers on October 1 of every year, beginning in 1988. *See* Pub.L. No. 100–690, § 6105 (1988) (codified, as amended, at 42 U.S.C. §§ 3796(a), (h) (1999)).

public agency in an official capacity, with or without compensation, ... as a member of a[n] ... ambulance crew." 42 U.S.C. § 3796b(8)(A). Since Congress has defined the term at issue, the BJA must give effect to Congress' express unambiguous intent. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency[.]"); *see also Chacon*, 48 F.3d at 512 (quoting same).

Therefore, in order to qualify as a "public safety officer," under the PSOBA in this case, Plaintiff Samantha Scott must establish that Ms. Debora Scott was serving: (1) in a public agency; (2) in an official capacity; and (3) as a member of an ambulance crew. *See* 42 U.S.C. § 3796b(8)(A).

### a. The EBRP EMS Was A "Public Agency."

The parties do not dispute that the EBRP EMS was a "public agency." *See* AR Ex. 11 at 10, Ex. 13 at 2.

### b. Ms. Debora Scott Was Serving In The EBRP EMS In An "Official Capacity."

Congress did not define the term "serving a public agency in an official capacity," nor does the legislative history of the PSOBA provide specific guidance in this regard. Congress, however, authorized the BJA to establish "such rules, regulations, and procedures as may be necessary to carry out the purposes of [the PSOBA]." 42 U.S.C. § 3796c(a); *see also United States v. Mead*, 533 U.S. 218, 226–27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (holding that a court must determine an agency's interpretation of a statute to be reasonable and afford deference to such interpretation "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.").

The BJA has determined the term "serving a public agency in an official capacity" to mean:

In order to be serving a public agency in an official capacity one must be an officer, employee, volunteer, or in a similar relationship of performing services as a part of a public agency. To have such a relationship with a public agency, *an individual must be officially recognized or designated as functionally within or a part of the public agency.*

U.S. Department of Justice, *Legal Interpretations of the Public Safety Officers' Benefits Act* ("DOJ *Legal Interpretations*"), at 9 (1981) (emphasis added). The United States Court of Appeals for the Federal Circuit has reviewed this definition and concluded that "we see nothing unreasonable in it." *Chacon*, 48 F.3d at 512.

### i.) Ms. Debora Scott Was Not An "Officer" Of The EBRP EMS.

The Government concedes that Ms. Debora Scott assisted licensed paramedics in performing their duties, but argues that such assistance did not make her a "public safety officer." *See* Gov't Motion J. AR at 5. The Government maintains that as a student intern with the EBRP EMS, Ms. Debora Scott's status did not have any characteristics of an "officer," *e.g.*, creation of the position by constitution or statute; a requirement that the person be elected or appointed; being vested with supervisory and discretionary authority; and exercising a large degree of independence. *Id.* (citing Am. Jur. 2D Public Officers and Employees). The court concurs.

### ii.) Ms. Debora Scott Was Not An "Employee" Of The EBRP EMS.

In addition, the Government asserts that Ms. Debora Scott was not an employee. *Id.* Factors relevant to a determination of whether an employment relationship exists include: the alleged employer's selection and hiring of the alleged employee; the parties intent, as expressed in a contract; the payment of wages; the provision of fringe benefits; and the duration of the alleged employee's service. *Id.* (citing Am. Jur. 2D Employment Relationship § 1). The court concurs.

### iii.) Ms. Debora Scott Was A "Volunteer" In The EBRP EMS.

■ The Government also argues that Ms. Debora Scott was not a volunteer, because she did not choose to work for the EBRP EMS. *See* Gov't Motion J. AR at 5–6. Instead, Ms. Debora Scott was required by the College to participate in an internship in order to become a licensed EMT–Paramedic and the College chose the agency to which she was assigned. *Id.* at 6. The Government places great weight on the fact that the Agreement between the College and EBRP EMS did not include: discretion to accept or reject an individual for membership and the power to terminate an individual's membership in the organization. *Id.* at 7–8 (citing AM. JUR. 2D EMPLOYMENT RELATIONSHIP § 1). The Agreement provided only that the EBRP EMS would receive the names of participants in the field internship program 60 days before the commencement of the program. *See* Gov't Motion J. AR at 8. A student on the list could be excluded, but only if the College was notified at least 45 days before the internship began. *Id.* Therefore, the Government reasoned that "one would expect that, if the [EBRP EMS] had decided to accept someone into the organization, [the agency] would ensure that it has the ability to remove them or otherwise end their association if it turned out that the individual was disruptive or harmful to the agency ... [T]he Agreement appears to foreclose the possibility of unilateral termination." *Id.*

The Government analogizes Ms. Debora Scott's status to the Arizona state prison inmates in *Chacon*, where survivors of certain inmates brought suit to recover death benefits pursuant to the PSOBA. *See* Gov't Motion J. AR at 6 (citing *Chacon*, 48 F.3d at 508). In that case, the inmates were part of a firefighting detail administered by the Arizona Department of Corrections that contracted with the Arizona State Land Department to provide the detail to support regular firefighters. *Chacon*, 48 F.3d at 510. As part of their incarceration, the inmates were required to perform "gainful activity;" participation in the firefighting detail was one option for inmates to meet this requirement. *Id.* at 512. While fighting a fire, four inmates were killed. *Id.* at 510. In holding, as a matter of law, that the inmates were not "volunteers" and not part of a "public agency" for purposes of the PSOBA, the United States Court of Appeals for the Federal Circuit observed that: "[the] decedents were required to perform gainful activity during their incarceration; while the choice to join the fire suppression detail was termed 'voluntary,' serving on *some* detail was mandatory." *Id.* at 513 (emphasis in original).

The Government's conclusion that Ms. Debora Scott was not a volunteer is erroneous. A "volunteer" is a person who "undertakes a service." MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 1320 (10th ed.2001). Unlike the inmates in *Chacon* who were involuntarily committed to serve hard labor, Ms. Debora Scott chose to attend Our Lady of the Lake College, elected to participate in the part-time field clinical program, and undertook to use her skills as a licensed EMT–Basic to serve EBRP EMS and its patients.[5] The fact that Ms. Debora Scott received college credit toward becoming an EMT–Paramedic in no way diminishes the voluntary character of the services contributed to the EBRP EMS or her utility to the community. Therefore, the court has determined, as a matter of fact and law that Ms. Debora Scott was serving as a "volunteer" in the EBRP EMS at the time of her death.

### iv.) Ms. Debora Scott Was "Designated Functionally" As Part Of The EBRP EMS.

■ Next, the Government argues that because students are not parties to the

---

**5.** In a Fair Labor Standards Act case, the Solicitor General argued that the Department of Labor determines whether individuals have volunteered their services by "a variety of facts, including the receipt of any benefits from those for whom the services are performed, whether the activity is a less than full-time occupation, and whether the services are of the kind typically associated with volunteer work. The Department has recognized as volunteer services those of individuals who help to minister to the comfort of the sick[.]" *Tony and Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 303 n. 25, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) (citing Brief for Respondent 4–5, and n. 3). Under these standards, it would appear that the Department of Labor would recognize Ms. Debora Scott as a volunteer under the "variety" of factors in this case.

Agreement, no contractual relationship existed between Ms. Debora Scott and the EBRP EMS and, therefore, she was not " 'officially recognized' as part of the [EBRP EMS]." *See* Gov't Motion J. AR at 6–7 (citing DOJ *Legal Interpretations* at 9). The Agreement differentiated between students and preceptors (EMS personnel): "SERVICE will cooperate with the College ... and allow the students of the COLLEGE ... to acquire an appropriate number of hours of field-internship under the direct and consistent supervision of a qualified preceptor." AR Ex. 5; *see also* Gov't Motion J. AR at 7. In addition, the Agreement stated that the internship extended the students' training into the clinical setting, but did not create a new relationship between the students and the EBRP EMS. *See* Gov't Motion J. AR at 7.

The court finds the Government's discussion of whether Ms. Debora Scott was "officially recognized" as part of the EBRP EMS to be inherently, if not intentionally, ambiguous. For example, if "officially recognized" means that Ms. Debora Scott must be a party to the Contract, then she does not have that status. If "officially recognized" includes whether Ms. Debora Scott was an intended beneficiary of the Contract, then she would be "officially recognized." If "officially recognized" means by entities other than the public agency, then Ms. Debora Scott meets this criteria. *See* AR at 2 (May 8, 2000 notarized letter of the Director, Emergency Health Science Program, Our Lady of the Lake College stating that Ms. Debora Scott would be receiving an honorary degree posthumously); *see also* AR 8 (National EMS Memorial Services 2000 Honorees listing Ms. Debora Scott "EMS Paramedic Program of Baton Rouge, LA, who died in the line of duty in an ambulance collision[.]").

In any event, the record confirms that Ms. Debora Scott was "designated functionally" as part of the EBRP EMS, as a member of an ambulance crew. The Agreement expressly required students of the College:

[T]o abide by all the rules, regulations, or policies of the [EBRP EMS], to appear at all scheduled field internship sessions or notify the [EBRP EMS] ..., to present himself/herself in attire consisting of the official uniform of the COLLEGE with a prominent name plate, to conduct himself/herself in a professional manner at all times, and to assist in the regular duty operations of the [EBRP EMS] as appropriate.

AR Ex. 5. In addition, Ms. Debora Scott was expected to perform EMT–Basic services, for which she was licensed, as an assigned member of the EBRP EMS ambulance crew.

The Government argues that two additional facts "lend support" to the BJA Acting Director's Final Decision that Ms. Debora Scott was "not officially recognized as functionally part of the agency." *See* Gov't Motion J. AR at 8.[6] First, the Agreement required the students to wear an official Our Lady of the Lake College uniform while participating in the field internship. *See* Gov't Motion J. AR at 8–9; *see also* AR Ex. 5 ("The Student agrees to ... present himself/herself in attire consisting of the official uniform of the COLLEGE[.]"); AR Ex. 10 at 36 ("Even students that are in a program sponsored by East Baton Rouge Parish–EMS have a uniform that is slightly different than the practicing paramedic to identify the differences between the paramedic [who is] licensed, certified to practice and the one that is there in that role of the paramedic student."). This argument is also unpersuasive. The fact that "Candystripers" wear pink and white striped uniforms does not diminish the fact that these individuals are volunteers who are "officially recognized" by hospital medical and support staff by whom they are supervised and "designated functionally" to perform specified services. *See* Hospital Volunteer, WIKIPEDIA, http://en.wikipedia.org/wiki/Candystriper (last visited January 31, 2006). Likewise, Ms. Debora Scott's uniform is irrelevant to whether she was "designated functionally" to render EMT–Basic services to EBRP EMS patients.

---

**6.** Here, the Government restates the concepts of "officially recognized" *or* "designated functionally" as one: *i.e.,* "not officially recognized *as*

functionally part of the agency." Gov't Motion J. AR at 8 (emphasis added).

Second, the Government argues that the fact that the internship was for a "short and fixed period ..." weighs against finding that Ms. Debora Scott was "functionally part of the agency or in a similar relationship as an officer, employee, or volunteer of the agency." Gov't Motion J. AR at 9. The Government, however, ignores the fact that Congress placed no temporal qualifications or limits on the individuals statutorily designated as PSOBA recipients. *See* 42 U.S.C. § 3796(a).

Accordingly, the court has determined, as a matter of fact and law, that Ms. Debora Scott was "designated functionally" as part of the EBRP EMS.

### c. Ms. Debora Scott Was A Member Of An EBRP EMS Ambulance Crew.

The parties do not dispute that Ms. Debora Scott was a member of an EBRP EMS ambulance crew. *See* AR Ex. 11 at 11, Ex. 13 at 2.

### 2. The Bureau Of Justice Assistance's Acting Director's Final Decision That Ms. Debora Scott Was Not A "Public Safety Officer" Was Contrary To Law, As Well As Arbitrary And Capricious.

In *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415–17, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the United States Supreme Court set forth a precise and detailed analysis of the appropriate "standards" of review to be applied by a court reviewing agency determinations. First, the court must ascertain whether the agency "acted within the scope of [its] authority." *Id.* at 415, 91 S.Ct. 814; *see also* 5 U.S.C. § 706(2)(C). Second, the court must determine that "the actual choice made [by the agency] was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Citizens to Preserve Overton Park,* 401 U.S. at 416, 91 S.Ct. 814 (quoting 5 U.S.C. § 706(2)(A)). Under the latter standard, the court must determine "whether the decision was based on a consideration of the relevant factors and whether there has been a *clear error of judgment.*"

*Id.* (emphasis added); *see also Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (holding an agency's actions could be "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.").

To be sure, Congress authorized the BJA to establish "rules, regulations, and procedures as may be necessary to carry out the purposes of the [PSOBA]." 42 U.S.C. § 3796c(a). The Department of Justice's *Legal Interpretation,* while of general interest, are not "rules, regulations, or procedures." Nor do they have the effect of legal precedent in the United States Court of Appeals for the Federal Circuit or the United States Court of Federal Claims. The BJA Acting Director, however, relied on the agency's interpretation of "serving a public agency in an official capacity" to conclude, as a matter of law, that Ms. Debora Scott was not a "public employee member of an ambulance crew." *See* AR Ex. 13 ¶¶ 6–7. The statutory definition of "public safety officer" does not require the individual to be a "public employee." *See* 42 U.S.C. § 3796b(8)(A). Therefore, since the Department of Justice's *Legal Interpretation* was utilized to narrow Congress' explicit definition of "public safety officer," the BJA Acting Director's Final Decision is entitled to no deference, as it was contrary to law, as well as arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856; *Citizens to Preserve Overton Park,* 401 U.S. at 416, 91 S.Ct. 814. The court has determined there is no ambiguity in Congress' definition of "public safety officer" and the BJA Acting Director's decision to the contrary must be set aside. *See Chevron,* 467 U.S. at 843, 104 S.Ct. 2778 (holding only if the statute is "silent or ambiguous" is any further inquiry required.); *see also Shalala v. Whitecotton,* 514 U.S. 268, 277, 115 S.Ct. 1477, 131 L.Ed.2d 374 (1995) (O'Connor, J., concur-

ring) (in determining the clarity of the statute, the court "relies on common sense consideration of the words[.]").

### E. Other Relief Requested.

In this case, Debora Scott died in November 1999. The Bureau of Justice Assistance took three years and eight months to deny Ms. Debora Scott's surviving daughters' claim and afford them access to the United States Court of Federal Claims. Because of issues relating to Plaintiff Shonda Scott Hillensbeck's standing, the court was not in a position to render a final judgment until December 5, 2005. Unfortunately, Congress has not authorized the United States Court of Federal Claims to award interest in cases brought under the PSOBA. *See Library of Congress v. Shaw,* 478 U.S. 310, 314, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) ("In the absence of express congressional consent to [or a contract provision requiring] the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award."). In light of the fact that PSOBA cases typically take a period of years to adjudicate, the court believes that Congress should revisit the availability of interest, where the Bureau of Justice Assistance takes two years or more to render a Final Decision and to require the court to issue a decision and find judgment within 120 days after receiving the Administrative Record.

Plaintiff Samantha Scott may file with the court an application for attorney fees and other expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A).

### CONCLUSION

In the August 31, 2005 Memorandum Opinion and Order, the court denied the Government's Motion for Judgment on the Administrative Record and granted Plaintiff's Cross–Motion, as to Plaintiff Samantha Scott. *See Hillensbeck I,* 68 Fed.Cl. at 74.

For the reasons discussed herein, Plaintiff Samantha Scott is hereby awarded $146,949.60. The Clerk of the United States Court of Federal Claims is DIRECTED to dismiss Plaintiff Shonda Scott Hillensbeck's claim, with prejudice, and to enter final judg-

ment for Plaintiff Samantha Scott in accordance with this Memorandum Opinion and Final Order.

**IT IS SO ORDERED.**